**UNITED STATES**

v.

**Michael W. STURGEON, 562 11 1315 Private First Class (E–2), U.S. Marine Corps.**

**NMCM 92 00078.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 8 Oct. 1991.

Decided 29 July 1993.

LT Mary Anne Razim–Fitzsimons, JAGC, USNR, Appellate Defense.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before LARSON, STRICKLAND and ORR, JJ.

ORR, Senior Judge:

Contrary to his pleas, the appellant was convicted by the military judge sitting alone of three unauthorized absences, twice

missing movements by design, and stealing an identification card and driver's license from another Marine in violation, respectively, of Articles 86, 87, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 887, 921. He was acquitted of one forgery offense. He was sentenced to confinement for 18 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged, and the record of trial has been forwarded to this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866.

## I.

The appellant complains that the military judge erred in denying his motion to dismiss five of the seven offenses on which he was arraigned for lack of a speedy trial under the 120–day requirement of Rule for Courts–Martial (R.C.M.) 707. This first of the appellant's five assignments of error[1] focuses on the change to R.C.M. 707 that occurred as the result of Executive Order No. 12,767 of 27 June 1991, which constituted Change 5 to the Manual for Courts–Martial, United States, 1984 (MCM). As specified in the Executive Order, the amendments to R.C.M. 707 apply only to cases in which arraignment occurs on or after 6 July 1991. Exec. Order No. 12,767,

§ 4.*d*, 3 C.F.R. 334, 341 (1991). The five offenses at issue were initially preferred on 18 January 1991 while the appellant was unavailable as a result of an unauthorized absence. He was not available until 5 April 1991, and he became unavailable again on 24 April 1991 due to another unauthorized absence. The appellant became available thereafter on 14 July 1991, and he was arraigned on 18 September 1991. Consequently, he bases this assigned error on the current iteration of R.C.M. 707[2] even though charges were preferred approximately 6 months before the effective date of the current Rule. This leads us to the anomaly the appellant seeks to exploit.

The gist of the appellant's contention is whether the periods of his unavailability should be deducted from the period of Government accountability in determining whether he was brought to trial on those initial five offenses within 120 days after the preferral of charges as required by R.C.M. 707(a).[3] The previous version of R.C.M. 707 provided a list of excludable periods, which included "[a]ny period of delay resulting from the absence or unavailability of the accused." R.C.M. 707(c)(6) (pre-Change 5). The Change 5 version of the Rule replaced the list of excludable periods with the following, less specific, direction, which states in pertinent part:

V. THE GENERAL COURT–MARTIAL LACKED JURISDICTION BECAUSE APPELLANT'S MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. [CITATIONS OMITTED.] BECAUSE THE ERROR IS JURISDICTIONAL AND NOT WAIVED ON THE RECORD, APPELLANT'S FAILURE TO LITIGATE IT AT TRIAL DOES NOT WAIVE IT FOR APPELLATE REVIEW.

---

1. I. THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S CHARGES I, IV, V, SPECIFICATION 2 OF CHARGE II, AND SPECIFICATION 1 OF CHARGE III FOR LACK OF A SPEEDY TRIAL.
 II. APPELLANT ESTABLISHED A DURESS DEFENSE TO THE CHARGES OF UNAUTHORIZED ABSENCE AND MISSING MOVEMENT, AND THUS HIS CONVICTION FOR THESE OFFENSES WAS ERROR.
 III. THE ADJUDGED SENTENCE OF CONFINEMENT FOE EIGHTEEN MONTHS IS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE.
 IV. THE GENERAL COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE LACKED A FIXED TERM OF OFFICE AND WAS THUS INSUFFICIENTLY INDEPENDENT TO SATISFY THE REQUIREMENTS OF THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. [CITATION OMITTED.] BECAUSE THE ERROR IS JURISDICTIONAL, IT IS NOT WAIVED BY APPELLANT'S FAILURE TO LITIGATE IT AT TRIAL.

2. References to the previous version of R.C.M. 707 will include the parenthetical "(pre-Change 5)".

3. Prior to Change 5, the 120–day time period began upon *notice to the accused* of preferral of charges or the imposition of pretrial restraint, whichever occurred first. R.C.M. 707(a) (pre-Change 5). In this case the appellant was placed in pretrial confinement on 15 July 1991 and informed of the preferral of the five offenses on 22 July 1991.

*Excludable delay.* All periods of time covered by stays issued by appellate courts and all other pretrial delays approved by a military judge or the convening authority shall be excluded when determining whether the period in subsection (a) of this rule has run.

(1) *Procedure.* Prior to referral, all requests for pretrial delay, together with supporting reasons, will be submitted to the convening authority or, if authorized under regulations prescribed by the Secretary concerned, to a military judge for resolution. After referral, such requests for pretrial delay will be submitted to the military judge for resolution.

. . . .

R.C.M. 707(c). Since the periods of the appellant's unavailability began prior to the promulgation of Executive Order No. 12,-767, no requests for approval of delays in the prosecution of those five offenses were made, and neither the convening authority nor the military judge approved any such delays.

 The current version of the Rule also provides that "[i]f charges are dismissed, ... a new 120–day time period under this rule shall begin on the date of dismissal ... for ... cases in which the accused is in pretrial restraint." R.C.M. 707(b)(3)(A). According to counsel at trial and a stipulation of fact appended to the record as Appellate Exhibit V, the five offenses at issue here were "withdrawn"[4] and re-preferred on 12 September 1991. The appellant argues that, since the five offenses were not *dismissed,* the Government cannot claim the benefit of a new 120–day time period. We agree that no dismissal appears to have occurred since the only copy of the original charge sheet available to us (attached to Appellate Exhibit I) does not indicate that any action was ever taken to dismiss the five offenses, and no representation has been made that a dismissal was ever intended.

 The Air Force Court of Military Review recently addressed essentially this same situation in *United States v. Shim,* 36 M.J. 1124 (A.F.C.M.R.), *certificate for review filed,* 38 M.J. 188 (C.M.A.1993), and concluded that the plain meaning of Section 4.*d* of Executive Order No. 12,767 required the dismissal of a desertion charge where the charge had been preferred in 1981 and the accused did not return to military control until 1992. We disagree, however, with our Air Force brethren. Applying a provision based upon its "plain meaning" has limitations, and a court should look beyond the words to the purpose of the provision, be it statute or executive order, when the plain meaning leads to an absurd result. *See United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940). In addition, we should "adopt the construction which most 'accurately reflects the intention of' the President, 'is more consistent with the structure of the' Rule, 'and more fully serves the purposes of' R.C.M. 707." *United States v. Leonard,* 21 M.J. 67, 69 (C.M.A.1985) (quoting *F.B.I. v. Abramson,* 456 U.S. 615, 625, 102 S.Ct. 2054, 2061, 72 L.Ed.2d 376 (1982)). We also think there is more to Section 4 of the Executive Order that may be relevant to this issue than subsection *d.* Subsection *i* states:

Nothing in these amendments shall be construed to invalidate any nonjudicial punishment proceeding, restraint, investigation, referral of charges, trial in which arraignment occurred, or other action begun prior to 6 July 1991, and any such restraint, investigation, ... or other action may proceed in the same manner

---

4. Whatever occurred to the January 1991 charges, they were not withdrawn because they had never been referred. R.C.M. 604(a); *United States v. Mucthison,* 28 M.J. 1113, 1115 (N.M.C.M.R.1989) (per curiam). Even if what occurred could be construed as a proper withdrawal, the Court of Military Appeals has held, in applying a similar provision in the earlier version of R.C.M. 707, that withdrawal and re-preferral of charges on the same day, particularly when the accused remains in pretrial restraint, does not constitute a dismissal for the purpose of creating a new speedy-trial clock. *United States v. Britton,* 26 M.J. 24, 26 (C.M.A. 1988).

and with the same effect as if these amendments had not been prescribed.

Exec. Order No. 12767, § 4.*i*, 3 C.F.R. at 342.

This provision raises two questions: First, whether receiving sworn charges and waiting for an accused to be available for prosecution in reliance upon then existing provisions of R.C.M. 707 (pre-Change 5) is "any ... other action" within the meaning of this savings clause; and, second, whether "invalidate" can be said to apply to the consequence that would appear to result if the current version of R.C.M. 707 is applied to preferrals that occurred prior to 6 July 1991. The Air Force Court did not address these issues in *Shim* and made no mention of the Executive Order's savings clause.

■ As to the first question, we conclude that the forwarding of sworn charges to the officer authorized to exercise summary court-martial jurisdiction over an accused and then simply waiting for that accused to be available for prosecution may be considered "action" under the terms of the Executive Order. Certainly the forwarding and receipt of preferred charges is an "action" in the procedural process to bring a member of the armed services to a trial by court-martial. Article 30, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 830; R.C.M. 202(c)(2), 307. If that servicemember is absent or unavailable for trial, simply waiting until the member returns or is returned, without dismissing the charges, may be the only further "action" the member's command is able to take.

■ As to the second question, to "invalidate" generally means to cause something to be without legal force or effect. Black's Law Dictionary 739 (5th ed. 1979); Webster's Third New International Dictionary 1188 (1971). In the words of the savings clause, the amendments to R.C.M. 707 should not be construed to cause preferring charges, forwarding and receiving those charges, and waiting until the accused returns to the jurisdictional control of the armed forces, otherwise permissible under the then-existing version of the Rule, to be without legal force or effect, and the pre-

ferral, forwarding, receipt, and wait may be considered or may proceed in the same manner and with the same effect as if the amendments had not been enacted.

Considering the forwarding of preferred charges to the officer exercising summary court-martial jurisdiction over an absent accused in that context, the usual purpose of such action is to toll the running of the statute of limitations. *See* Discussion, R.C.M. 403(a), MCM, 1984. Although Shim was ultimately charged with desertion, if the Government's evidence was insufficient to establish that Shim intended to remain away permanently, the Government may have only been able to prove an unauthorized absence. When Shim left his unit in 1981, there was no provision in Article 43 that excluded periods of unauthorized absence from computing the period of the limitation, and the period applicable to unauthorized absences was only 2 years. 10 U.S.C. § 843 (1976). Consequently, if the Air Force had not acted to toll the statute by preferring the desertion charge, prosecution of the lesser included unauthorized absence offense would have been barred in 1983.

In the case before us, Sturgeon's first absence began after the 1986 amendments to Article 43 added the provision for tolling the statute during such absences and extended the limiting period to 5 years. National Defense Authorization Act For Fiscal Year 1987, Pub.L. No. 99–661, § 805, 100 Stat. 3816, 3908 (1986). Consequently, the need to forward preferred charges to the officer exercising summary court-martial jurisdiction over Sturgeon when he became an unauthorized absentee in 1990 was not nearly as compelling as it was with Shim in 1981. *See United States v. Brown*, 30 M.J. 907 (A.C.M.R.1990) (1986 amendments to statute of limitations do not apply to absences that began before the effective date of the amending statute). At the time Sturgeon began his unauthorized absence in 1990, however, the Marine Corps apparently still required preferral of a charge before a command could administratively declare an unauthorized absentee to be a deserter and utilize the procedures

for notifying law enforcement authorities that a servicemember was wanted by the armed forces. See Appellate Exhibit II, Trial Counsel's Answer to Motion to Dismiss, 3 October 1991, ¶ 3. Nevertheless, whether the intended purpose of forwarding preferred charges on Sturgeon was to toll the statute of limitations (which still occurred notwithstanding the ability to deduct periods of unauthorized absence), to enlist the assistance of law enforcement authorities to apprehend him, some other purpose, or a combination of those purposes directed toward his ultimate prosecution, the ability to do so would be thwarted by the ex post facto application of the current requirements of R.C.M. 707.

We have been unable to find any materials addressing this aspect of the recommendations of the Joint–Service Committee on Military Justice that prompted Change 5, and it is uncertain why the drafters selected *arraignment* as the key for applying the amendments to the speedy trial rule of R.C.M. 707 as opposed to *preferrals* on or after 6 July 1991. The amendments to R.C.M. 1010, which are grouped with those to R.C.M. 707 in section 4.*d* of the Executive Order, concern the requirement that the military judge ensure the defense counsel has informed the accused of his post-trial and appellate rights prior to adjournment. Other amendments to rules appearing in Chapter VII of the Rules for Courts–Martial, concerning pretrial matters such as discovery (R.C.M. 701) and pretrial agreements (R.C.M. 705), apply only to cases where preferral occurs on or after 6 July 1991. Exec. Order 12,767, § 4.*c*, 3 C.F.R. at 341. We can only speculate why the amendments to R.C.M. 707, which is also part of Chapter VII of the Rules, were not addressed in the same manner as other amendments to that chapter but were grouped instead with amendments to a rule in Chapter X, which concerns sentencing.

Whatever the intention of the drafters or the President may have been, we conclude that their or the President's purpose was *not* to provide a boon to servicemembers who committed offenses long before the effective date of Change 5 and then re-mained absent from their service until after the amendments to R.C.M. 707 became effective. The 1986 amendments to the statute of limitations in Article 43 of the Code would also be frustrated by the ex post facto application of the 1991 amendments to R.C.M. 707. We think it was just this type of situation the savings clause of section 4.*i* was intended to prevent.

## II.

As to the appellant's remaining assignments of error, the appellant's attempt to raise the defense of duress, the subject of the second assigned error, was fully litigated and sharply contested at trial, where the military judge had the opportunity to observe the numerous witnesses who testified on this issue. By finding the appellant guilty of the absence and missing movement offenses, he was convinced beyond a reasonable doubt that the defense did not exist. *See United States v. Dehart*, 33 M.J. 58, 62 (C.M.A.1991). So are we.

In his third assignment of error, the appellant contends that the confinement adjudged as part of the sentence is inappropriately severe. We disagree with that contention and conclude that a sentence which includes confinement for 18 months is appropriate under the facts and circumstances of this case. The appellant's fourth and fifth assignments of error are also without merit. *See United States v. Graf*, 35 M.J. 450 (C.M.A.1992); *United States v. Weiss*, 36 M.J. 224 (C.M.A.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

Accordingly, the findings and sentence, as approved on review below, are affirmed. We note, however, that the court-martial order incorrectly summarizes the specification under Charge I and simply describes the offense charged as "Desertion on 5 April 1991." In actuality, the desertion alleged in that offense began on 20 August 1990 and terminated on 5 April 1991. Although the order correctly states that the appellant was found guilty of the lesser included offense under Article 86, the reference to the April 1991 date appears to be the inception date of the absence vice the

correct 20 August 1990 date. The issuance of a corrected court-martial order is necessary, and it is hereby ordered.

Senior Judge STRICKLAND concurs.

LARSON, Chief Judge (concurring):

I concur entirely with Senior Judge Orr's analysis of the issue presented in the appellant's first assignment of error. I write separately only to emphasize what I consider to be the principle reason for the conclusion he reaches.

Notwithstanding his unauthorized absence between preferral and arraignment, the appellant urges us to find that he was denied his right to a speedy trial because the Government did not comply with a provision of Change 5 to Rule for Courts–Martial (R.C.M.) 707. The provision in question requires the approval of the military judge or the convening authority to exclude periods of unauthorized absence from Government accountability. Under R.C.M. 707 before Change 5 (which was not in effect during the appellant's absence), such periods were automatically excluded. To accept the appellant's position would be to interpret the provisions of Change 5 so as to require Government compliance with them *before* the date they became effective. The illogic of that interpretation is apparent. *See United States v. Leonard*, 21 M.J. 67, 69 (C.M.A.1985).

It is precisely this type of situation for which a savings clause is designed, i.e., to ensure that the rules of law that apply to a given factual situation are those in effect at the time the situation occurs. The majority's application of the savings clause in Change 5 accomplishes that very purpose and, accordingly, I concur.