### UNITED STATES

v.

### Lavan D. PATTERSON, 170–46–4957 Airman Apprentice (E–2), U.S. Navy.

### NMCM 91 03091.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 26 Sept. 1991.

Decided 29 Oct. 1993.

9. *See* UCMJ art. 93, 10 U.S.C. § 893.

LT Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

LT Ralph G. Stiehm, JAGC, USNR, Appellate Government Counsel.

Before REED, Senior Judge and LAWRENCE and DeCICCO, JJ.

DeCICCO, Judge:

Prior to entering pleas at a general court-martial, appellant made two unsuccessful motions: 1) to dismiss Charge I, desertion, for lack of speedy trial, and 2) to suppress a urinalysis report dated 25 July 1991 as derivative evidence of an unlawful search and seizure. Thereafter, appellant entered conditional pleas of guilty to unauthorized absence [1] and unlawful use of cocaine, and unconditional pleas of guilty to another specification of unauthorized absence and larceny, in violation of Articles 86, 112a, and 121 Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a, and 921. The military judge accepted his guilty pleas and sentenced him to a bad-conduct discharge, confinement for 10 months, reduction to pay grade E–1 and forfeiture of $600.00 pay per month for 10 months. The convening authority approved the sentence as adjudged.

Appellant has assigned two errors on review.[2] We find no denial of appellant's right to a speedy trial, but set aside his conviction for wrongful use of cocaine.

---

1. Appellant pled not guilty to desertion under Charge I, but pled guilty to the lesser included offense of unauthorized absence. The government did not go forward on the greater offense.

2. I. THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO DISMISS CHARGE I DUE TO LACK OF A SPEEDY TRIAL.

II. THE MILITARY JUDGE ERRED WHEN HE FAILED TO GRANT APPELLANT'S MOTION TO SUPPRESS THE URINALYSIS REPORT DATED 25 JULY 1991 ON THE GROUNDS THAT IT WAS NOT OBTAINED PURSUANT TO A VALID UNIT SWEEP INSPECTION.

## FACTS

Appellant absented himself from his place of duty, USS RANGER (CV–61), on 31 May 1984, and the command preferred a charge against appellant on 19 June 1984. Appellant did not return to military control until 28 March 1991, and was assigned to the Transient Personnel Unit (TPU) at Naval Station, Philadelphia. While assigned at TPU Philadelphia, appellant committed further acts of misconduct, including unauthorized absences from 1 to 6 May 1991 and 13 to 14 June 1991.[3] The latest absence occurred after appellant broke into another sailor's locker and stole a briefcase containing money, jewelry, and credit cards. Appellant pawned the jewelry and used the money to purchase "crack" cocaine which he smoked prior to his return to TPU on 14 June. Upon returning to TPU, appellant was directed to submit to a urinalysis in accordance with TRANSIT-PERSUPHIL Instruction 5340.4 (14 November 1990) which requires urinalysis inspections for personnel returning from a period of unauthorized absence. Appellant tested positive for cocaine, and this misconduct ultimately became the basis of Additional Charge II. Appellant was confined on 15 June 1991. The Article 32, UCMJ, investigation was held on 6 August 1991, and the convening authority referred all charges to trial on 20 August 1991. The government announced that it was ready to proceed to trial three days later. Trial defense counsel requested and was granted a continuance from 23 August until trial was held on 23 September 1991.

## SPEEDY TRIAL

Appellant was not arraigned until the day of trial. After presentation of witnesses at an Article 39(a), UCMJ, session regarding appellant's motion to dismiss Charge I, the military judge analyzed the speedy trial issue as follows:

In this case, the triggering event was the accused's return to military control on 28 March 1991. Between the time the accused returned—the triggering event on 14 June 1991, the accused was involved in several incidents of misconduct involving unauthorized absence, drug use and larceny.

In arriving at a decision on this matter, the court has taken into consideration the following:

The gravity and complexities of the original and additional charges;

the length of time it took to investigate, prefer and refer the additional charges;

the non-existence of bad faith on the part of the government;

the lack of any demand for speedy trial or expeditious processing on the part of the defense.

The court also has considered the R.C.M. policy that all known charges should be tried at the same time.

To hold that the joinder policy is an irrelevant consideration under R.C.M. 707 is to abrogate that policy for all practical purposes.

It is the finding of this court, that on 23 August 1991, 148 days had elapsed from the triggering event. After subtracting out 6 days for unauthorized absence and 25 days for the investigation and processing of the additional charges, it is the opinion of this court that 23 August 1991 was the 117th day of accountability for speedy trial purposes. Accordingly, the motion is denied.

Record at 47–48.

At issue is the application of the revised rules for speedy trial prescribed in Executive Order No. 12767 of 27 June 1991, constituting Change 5 to the Manual for Courts–Martial, United States, 1984 (MCM). Change 5 to the MCM, Rule for Courts–Martial (R.C.M.) 707, requires the government to bring an accused to trial within 120 days of preferral of charges. R.C.M. 707(a). The government is accountable for any delay in bringing an accused to trial except those periods of time covered by stays issued by appellate courts and other pretrial delays

---

3. The period commencing 1 May was the subject of specification 1 of Additional Charge I, to which appellant entered a plea of guilty. The latter period commencing 13 June was never charged.

approved by the convening authority or a military judge. R.C.M. 707(c).

Generally, Change 5 to R.C.M. 707 applies to cases in which arraignment occurs on or after 6 July 1991. Exec.Order 12767, § 4.d, 3 C.F.R. at 341. We have, however, declined to apply the Change 5 rules for speedy trial in cases where arraignment occurred after 6 July 1991 if the application of the amendments would conflict with subsection 4.*i* of the Executive Order. *United States v. Sturgeon,* 37 M.J. 1083, (N.M.C.M.R. 1993). Section 4.*i* provides:

> Nothing in these amendments shall be construed to invalidate any nonjudicial punishment proceeding, restraint, investigation, referral of charges, trial in which arraignment occurred, or other action begun prior to 6 July 1991, and any such restraint, investigation, referral of charges, trial or other action may proceed in the same manner and with the same effect as if these amendments had not been prescribed.

Exec.Order 12767, § 4.*i*, 3 C.F.R. at 342.

This exception is equally applicable to appellant's case. As we discussed in *Sturgeon,* "the forwarding of sworn charges to the officer authorized to exercise summary court-martial jurisdiction over an accused and then simply waiting for that accused to be available for prosecution may be considered 'action' under the terms of the Executive Order." *United States v. Sturgeon,* 37 M.J. at 1087. Because § 4.*i* states that if there is other "action" begun prior to 6 July 1991 that trial may proceed in the same manner and with the same effect as if the amendments in Change 5 had not been prescribed, we will review the military judge's findings in accordance with R.C.M. 707 as it existed prior to 27 June 1991.

Utilizing the previous version of R.C.M. 707 to calculate the 120–day period, the military judge concluded that the 120–day period began upon appellant's return to military authority on 28 March 1991. *See United States v. Powell,* 38 M.J. 153 (C.M.A.1993).

▆ Prior to the 1991 amendments to R.C.M. 707, the 120–day period did not begin until the accused was notified of the preferral of charges or until the imposition of pretrial restraint, whichever occurred first. Appellant was not notified of the preferral of Charge I prior to being placed in pretrial confinement on 15 June 1991. The government, however, had a duty to notify him of the preferred charge within a reasonable time after his return to military authority. *United States v. Maresca,* 28 M.J. 328 (C.M.A.1989). The military judge properly found that this was the date of his return.

▆ Appellant does not contest the exclusion of 6 days of delay caused by appellant's subsequent absences in May and June of 1991 or the exclusion of any delay after August 23rd, when appellant requested a continuance.[4] Appellant contends, however, that the military judge erred in excluding 25 days for the purpose of joining all known charges at a single court-martial. We disagree.

The previous version of R.C.M. 707(c)(9) permitted the exclusion of delay for good cause. "The military judge has to find that the unusual event being relied upon actually caused a delay in the government's preparation of its case, and that it was reasonable for the delay to result." *United States v. Longhofer,* 29 M.J. 22, 28 (C.M.A.1989).

In *United States v. Lilly,* 22 M.J. 620 (N.M.C.M.R.1986), this court provided a list of factors for the military judge to weigh in determining whether the joinder of additional charges is an event justifying delay for good cause. The military judge correctly balanced these factors in concluding that the joinder of charges at a single court-martial justified a 25-day delay. In addition to the factors the military judge delineated in his findings, we believe that the joinder of the additional charges for trial at a single court-martial served the efficient and effective administration of military justice by subjecting appellant to a single court-martial. *See Lilly.* We also note that neither at trial nor on

---

4. The previous version of R.C.M. 707(c) enumerated certain events as the basis for automatically excluding delay, including delay caused by the absence of the accused and delay predicated upon a request for a continuance by the defense.

appeal has appellant contended that he suffered any prejudice from the delay.

In accordance with our findings above, we conclude that 148 days elapsed from the event triggering the 120–day period. After excluding 25 days delay to effectuate the R.C.M. 601(2)(e) policy of joining all known charges to a single court-martial, and 6 days due to appellant's additional unauthorized absences, we conclude that the military judge correctly attributed 117 days to the government, therefore no violation of R.C.M. 707 occurred.

Considering *United States v. Kossman*, 38 M.J. 258, (C.M.A.1993), we also conclude that the prosecution brought appellant to trial with reasonable diligence and that there was no violation of Article 10, UCMJ, 10 U.S.C. § 810.

## THE CONTESTED URINALYSIS RESULTS

■ It is well recognized that the Fourth Amendment only protects service members from unreasonable searches and seizures. *United States v. Thatcher*, 28 M.J. 20 (C.M.A.1981). Service members have a reduced expectation of privacy, and are on notice that they may be subjected to reasonable inspections. *United States v. Bickel*, 30 M.J. 277 (C.M.A.1990) (citing *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). Commands may perform inspections, including compulsory urinalysis, absent a showing of probable cause or individualized suspicion. *United States v. Turner*, 33 M.J. 40 (C.M.A.1991); *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983). In this respect, a search and an inspection are to be treated differently. *Turner*. An inspection is defined within Mil.R.Evid. 313 as:

> an examination of the whole or part of a unit, organization, installation, vessel, aircraft, or vehicle, including an examination conducted at entrance and exit points, conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle.

■ Evidence obtained pursuant to a compulsory urinalysis is admissible in a subsequent court-martial as long as the inspection is "conducted pursuant to preestablished guidelines rather than at the discretion of a commander." *United States v. Daskam*, 31 M.J. 77, 82 (C.M.A.1990) (citing *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)). A showing of probable cause, however, is required if the inspection is conducted as a subterfuge for a search or in an unreasonable manner. *United States v. Ellis*, 24 M.J. 370 (C.M.A.1987). An inspection is unreasonable if it extends beyond the area authorized to be inspected or is conducted for an invalid purpose. *Ellis*.

■ Individual commands are authorized in accordance with OPNAV Instruction 5340.4B (13 September 1990) to categorize personnel returning from a period of unauthorized absence as a unit for the purpose of conducting urinalysis inspections. TPU Philadelphia established guidelines for the implementation of this policy through TRANSITPERSUPHIL Instruction 5340.4 (14 November 1990), requiring urinalysis inspections for "all personnel who surrender or are apprehended after an unauthorized absence." Based upon this instruction, the military judge found the seizure of appellant's urine and the laboratory report derived therefrom to be part of a valid "unit sweep" inspection and thus admissible under Mil.R.Evid. 313(b).

Although the command seized appellant's urine under authority of TRANSITPERSUPHIL Instruction 5340.4, appellant challenges the validity of the inspection because of the inconsistent enforcement of the unit's instruction by the officer-in-charge, LT F. We agree that appellant's submission to the compulsory urinalysis was not an inspection within the meaning of Mil.R.Evid. 313 because the unit's urinalysis policy was rendered a nullity as a result of the arbitrary application of TRANSITPERSUPHIL Instruction 5340.4.

■ An inspection is not transformed into a search merely because some discretion is exercised by law officers charged with executing the inspection. *United States v.*

*Flowers,* 26 M.J. 463 (C.M.A.1988); *United States v. Johnson,* 24 M.J. 271 (C.M.A.1987); *United States v. Harris,* 5 M.J. 44 (C.M.A. 1978). *See also Colorado v. Bertine,* 479 U.S. 367, 375, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987) (Although an inventory search of a vehicle was performed in a "slipshod manner" the court held that police may exercise discretion in accordance with "standard criteria and on the basis of something other than suspicion of criminal activity.") Such discretionary powers cannot, however, be used to target particular individuals for inspection. As the Court of Military Appeals expressed in *Bickel:*

> neither Mil.R.Evid. 313 nor the Fourth Amendment permits a military commander to pick and choose the members of his unit who will be tested for drugs and then to use the resulting evidence to obtain a criminal conviction. Instead, the testing must be performed on a nondiscriminatory basis pursuant to an established policy or guideline that will eliminate the opportunity for arbitrariness by the person performing the tests.

30 M.J. at 286.

The language of TRANSITPERSUPHIL Instruction 5340.4 requires all personnel returning from an unauthorized absence to be subjected to a compulsory urinalysis, yet the instruction was rarely enforced. Approximately 20 to 25 service members absented themselves without authority each day, with the average period of absence lasting from one day to a week. Record at 13. Yet according to the unit's urinalysis coordinator, only 20 to 30 members of the command were tested each month. Record at 23. Upon the return of an unauthorized absentee, the unit's master-at-arms would contact LT F for directions regarding administrative processing and possible disciplinary action. LT F then instructed the master-at-arms how to handle each member's case including whether or not a urinalysis was required.

Cross-examination of LT F regarding the selection of returning absentees to provide a urine sample revealed the following:

Q. Do you always give members that go UA a urinalysis?

A. Yes.

Q. How come you didn't give him a urinalysis on the date of 6 May when he returned from an unauthorized absence?

A. Because it was a decision on my part not to do that.

Q. So, you randomly pick when you want to give a urinalysis?

A. No, we don't randomly pick. We look at the seriousness of the UA charges. If they were gone a longer period, that comes into play, and if there are other problems—any other potential charges, then that comes into play, and we decide whether or not we are going to do a urinalysis on the individual.

Q. So, you are saying that a one day UA is more serious [than] a five day UA.

A. I'm not saying that. I'm saying the instruction says we can—we can—we do not have to, but we can give [a] urinalysis for someone who is a returned UA.

Q. So you pick and choose at will?

A. Well—

Record at 11.

From this examination, we have little difficulty concluding that LT F was literally picking and choosing which returning absentees would provide urine samples. An uncharged unauthorized absence of less than 24 hours was generally not considered serious enough to require a urinalysis. Interestingly, appellant was not directed to provide a urine sample after either the 7–year or the 5–day absence, but was directed to do so after a one-day absence. The only factor distinguishing appellant from other returning unauthorized absentees was the fact that he was suspected of larceny. Such a basis for requiring appellant to submit a urine sample is beyond the purpose of a health and welfare inspection. *Thatcher; United States v. Brown,* 12 M.J. 420 (C.M.A.1982). *See also, Daskam.*

The urinalysis report was not obtained pursuant to a valid inspection and is therefore not admissible under Mil.R.Evid. 313. The government declined to pursue alternate theories of admissibility at trial, and no other theory is before this court for consideration on review. Therefore, the finding of guilty

to Additional Charge II is set aside and that charge is ordered dismissed. The remaining findings of guilty are affirmed.

As a result of our action on the findings above, we reassess the sentence. In accordance with the principles of *United States v. Peoples*, 29 M.J. 426, (C.M.A.1990) and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we reassess and affirm only so much of the sentence as provides for confinement for 8 months, forfeiture of $600.00 pay per month for 8 months, reduction to pay grade E–1, and a bad-conduct discharge.

Senior Judge REED and Judge LAWRENCE concur.