**UNITED STATES**

v.

**Abraham L. FERGUSON, 197 52 0966 Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 92 1157.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 Dec. 1991.

Decided 5 May 1994.

---

**826**

LT James Douglas, JAGC, USNR, Appellate Defense Counsel.

LT Scott A. Browne, JAGC, USNR, Appellate Government Counsel.

Before MOLLISON, DeCICCO and GUERRERO, JJ.

MOLLISON, Senior Judge:

The principal issues of this appeal from a special court-martial conviction concern the *mens rea* required for the offense of dereliction of duty and whether an accused may receive enhanced punishment for *willful* dereliction of duty when he is only charged with having constructive knowledge of the duty. On the issue of *mens rea* we hold that the offense of dereliction of duty requires proof that the accused knew or *reasonably should have known* of the duty of which he was allegedly derelict and that the accused failed to discharge that duty as a result of *simple negligence.* However, applying the "rule of lenity" to the provisions of the Manual for Courts–Martial prescribing maximum punishments, we hold that the enhanced punish-ment for *willful* dereliction of duty applies only when it is pled and proven that the accused had *actual knowledge* of the duty.

*Background.*

Contrary to his pleas, the appellant was found guilty of willful dereliction of duty, making false official statements, larceny, making a false claim, and unlawfully altering public records in violation of Articles 92, 107, 121, 132, and 134, respectively, Uniform Code of Military Justice [hereinafter UCMJ or "the Code"], 10 U.S.C. §§ 892, 907, 921, 932, 934 (1988), the essence of which is that appellant defrauded the Government of dependent-related allowances. A military judge sitting alone as a special court-martial sentenced the appellant to confinement for 100 days, forfeiture of $400.00 pay per month for 4 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence without modification.

 The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (1988). This Court may affirm such findings of guilty and such part of the sentence as it finds correct in law and fact and determines on the basis of the entire record should be approved. UCMJ art. 66(c), 10 U.S.C. § 866(c) (1988). This Court may hold a finding or sentence incorrect on an error of law only if the error materially prejudices the substantial rights of the appellant. UCMJ art. 59(a), 10 U.S.C. § 859(a) (1988).

The appellant filed six assignments of error.[1] None has merit or requires comment.

---

1. I. THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO FIND CHARGES II (ARTICLE 107), III (ARTICLE 121), AND IV (ARTICLE 132) MULTIPLICIOUS FOR FINDINGS PURPOSES.

II. THE GOVERNMENT FAILED TO PROVE, BEYOND A REASONABLE DOUBT, SPECIFICATION 3 OF CHARGE V (ALTERING A PUBLIC RECORD). (FOOTNOTE OMITTED.)

III. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. (CITATION OMITTED.) BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

IV. SPECIFICATION 1 OF CHARGE I, AS APPROVED, FAILS TO STATE AN OFFENSE BECAUSE THE DERELICTION OF DUTY IS BASED UPON NONPUNITIVE DISBURSING REGULATIONS WHICH DO NOT CREATE A SPECIAL DUTY TO OBEY FOR ALL MILITARY SERVICE MEMBERS.

V. THE GOVERNMENT FAILED TO PROVE SPECIFICATION 2 OF CHARGE I BEYOND A REASONABLE DOUBT.

*Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); *United States v. Teters,* 37 M.J. 370 (C.M.A.1993); *United States v. Heyward,* 22 M.J. 35 (C.M.A.1986).

The Court also assigned three issues for briefing by the parties:

## I.

IN LIGHT OF THE DEFINITION OF "WILLFULNESS" AS A "VOLUNTARY, INTENTIONAL VIOLATION OF A KNOWN LEGAL DUTY," *CHEEK [v. United States],* 498 U.S. 192 [111 S.Ct. 604, 112 L.Ed.2d 617] (1991), MAY THIS COURT AFFIRM A FINDING OF GUILTY OF WILLFUL DERELICTION OF DUTY WHEN THE SPECIFICATION ALLEGES ONLY THAT THE APPELLANT SHOULD HAVE KNOWN OF HIS DUTY?

## II.

IF THE FIRST SPECIFIED ISSUE IS ANSWERED IN THE NEGATIVE, MAY THIS COURT, NEVERTHELESS, AFFIRM A FINDING OF GUILTY OF NEGLIGENT DERELICTION OF DUTY AS A LESSER–INCLUDED OFFENSE OF WILLFUL DERELICTION OF DUTY?

## III.

DID THE COURT–MARTIAL LACK JURISDICTION TO TRY THE APPELLANT ON ALL OR PART OF THE OFFENSES OF WHICH HE WAS FOUND GUILTY BY VIRTUE OF *UNITED STATES EX REL. HIRSHBERG V. COOKE,* 336 U.S. 210 [69 S.Ct. 530, 93 L.Ed. 621] (1949)? *SEE UNITED STATES V. CLARDY,* 13 M.J. 308 (C.M.A. 1982).

The third specified issue is resolved adversely to the appellant on the basis of docu-

VI. THE GOVERNMENT FAILED TO PROVE CHARGE III, LARCENY OF U.S. CURRENCY, IN THAT THE MONIES WERE PROPERLY RECEIVED BY APPELLANT AS DEPENDENCY ALLOWANCES FOR HIS WIFE RHONDA.

ments filed with the Court and also will not be discussed further. *See generally Clardy; United States v. Cortte,* 36 M.J. 767 (N.M.C.M.R.1992). The remaining specified issues are discussed in detail below.

### *Discussion.*

■ Article 92(3), UCMJ, provides that "[a]ny person subject to the [UCMJ] who ... is derelict in the performance of his duties ... shall be punished as a court-martial may direct." 10 U.S.C. § 892(3) (1988). Congress has delegated to the President the authority to prescribe maximum authorized punishments for offenses which are punishable "as a court-martial may direct." UCMJ art. 56, 10 U.S.C. § 856 (1988). The President has exercised that authority by promulgating such limitations in the Manual for Courts–Martial, United States, 1984 [hereinafter MCM or "the Manual"]. Exec. Order No. 12473, 49 Fed.Reg. 17152 (1984), as amended. In this regard, the President has effectively delineated two degrees of dereliction of duty. If the dereliction of duty is through neglect or culpable inefficiency, the maximum authorized punishment is forfeiture of two-thirds pay per month for 3 months and confinement for 3 months. If the dereliction is willful, the maximum is a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.[2] MCM, 1984, Part IV, ¶ 16e(3). However, in order for the Government to avail itself of the enhanced punishment for willful dereliction, willfulness must be (1) alleged in the specification, (2) covered by instructions, and (3) established beyond a reasonable doubt. *See United States v. DiBello,* 17 M.J. 77 (C.M.A.1983); *United States v. Lovell,* 7 C.M.A. 445, 22 C.M.R. 235 (1956); *United States v. Nickaboine,* 3 C.M.A. 152, 11 C.M.R. 152 (1953).

In the three specifications of Charge I the appellant was charged with dereliction of duty during various periods by willfully fail-

2. Forfeitures are limited to two-thirds pay per month for a period of 6 months at trials by special courts-martial. UCMJ art. 19, 10 U.S.C. § 819 (1988).

ing to make reports concerning his marital status and spousal support.[3] Each specification referenced a Marine Corps order as the source of the duty to report. On the element of scienter, each specification alleged that the appellant "should have known of his duty" to report. The appellant was found guilty substantially as charged. Thus, it is possible the military judge found the appellant guilty and sentenced him for willful dereliction of duty on the basis of constructive knowledge of the duty to report, only. The potential incongruity between willfulness and constructive knowledge prompted this Court to specify the issues noted above and to address the question of whether one can be punished for a willful dereliction of duty without having actual knowledge of the duty.

Article 92(3) does not expressly require scienter or *mens rea*,[4] that is, Congress did not specify whether the offense of dereliction of duty has as an essential element that the accused knew of the duties, reasonably should have known of the duties, or for that matter need have any kind of knowledge, actual, constructive or otherwise, respecting his duties. Nor did it specify whether the dereliction must be purposeful, as a result of recklessness, simple negligence, or some other mental state, or whether a conviction could be based on strict liability, alone.

■ The Manual for Courts–Martial provides that actual knowledge of the duty need not be shown if the accused reasonably should have known of the duty and that an accused is derelict in the performance of duties when he willfully or negligently fails to perform them or performs them in a culpably inefficient manner. MCM, 1984, Part IV, ¶ 16c(3). The "drafters'" analysis of the Manual states that constructive knowledge was added as an alternative to a requirement of actual knowledge. MCM, 1984, Part IV, ¶ 16 Analysis. Thus, the President and "drafters" are of the opinion that constructive knowledge of the duties and simple neg-

ligence in failing to carry them out are sufficient for this offense. While the President's interpretation of the elements of the crimes delineated in Articles 77 through 132 of the Code and the "drafters'" analysis thereof are important, they are not binding upon this Court which has the independent responsibility to interpret the elements of the substantive offenses. *See United States v. Mance,* 26 M.J. 244, 252 (C.M.A.), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988); *United States v. Derrick,* —— M.J. ——, No. 30158 (A.F.C.M.R. 10 March 1994); *United States v. White,* 39 M.J. 796 (N.M.C.M.R.1994); *see also Ellis v. Jacobs,* 26 M.J. 90 (C.M.A.1988); *United States v. Omick,* 30 M.J. 1122 (N.M.C.M.R.1989). Moreover, we note the Manual interpretation on these points has varied over the years. *Compare* MCM, 1951, ¶ 171c; MCM, 1969 (rev. ed.), ¶ 171c; MCM, United States, 1984, Part IV, ¶¶ 16b(3)(b), 16c(3(b) (change 2 of 15 May 1986) *with* MCM, 1984, Part IV, ¶¶ 16b(3)(b), 16c(3)(b) (as originally issued).

■ In one respect, the issue of *mens rea* has been settled judicially. Clearly, simple negligence is the proper minimum standard for determining whether the nonperformance of a military duty is dereliction with the meaning of Article 92(3). *United States v. Lawson,* 36 M.J. 415 (C.M.A.1993). However, the issue of scienter (that is, whether the accused must have actual knowledge of the duty he failed to perform, need only have constructive knowledge of it, or no knowledge of it at all) has not been clearly settled by any military case of which we are aware. *Compare Heyward* (suggesting actual knowledge required) *with United States v. Grow,* 3 C.M.A. 77, 86–87, 11 C.M.R. 77, 86–87 (1953) (suggesting actual knowledge not required under all circumstances, yet cited with approval in *Heyward*). See also *United States v. Shelly,* 19 M.J. 325 (C.M.A.1985); *United States v. McCall,* 11 C.M.A. 270, 29 C.M.R. 86 (1960); *United States v. Wilson,* 33 M.J.

---

3. "A military member's failure to report a change in his status affecting his entitlement for a military pay allowance may amount to a dereliction of duty." *United States v. Antonelli,* 37 M.J. 932, 938 n. 14 (A.F.C.M.R.1993).

4. We acknowledge that scienter has been treated as an aspect of *mens rea. United States v. West,* 15 C.M.A. 3, 34 C.M.R. 449 (1964). We also note that the required mental state may be different for different elements of a crime. *Liparota v. United States,* 471 U.S. 419, 423 n. 5, 105 S.Ct. 2084, 2087 n. 5, 85 L.Ed.2d 434 (1985).

797, 800 n. 4 (A.C.M.R.1991); *United States v. Gonzales,* 9 M.J. 897, 900 (A.F.C.M.R. 1980); *United States v. Green,* 47 C.M.R. 727 (A.F.C.M.R.1973); *United States v. Haracivet,* 45 C.M.R. 674 (A.C.M.R.1972); *United States v. Pratt,* 34 C.M.R. 731 (C.G.B.R. 1963); *United States v. Flaherty,* 12 C.M.R. 466 (A.B.R.1953). Therefore, we are called upon to interpret Article 92(3) on this issue and, of necessity, resort to rules of statutory construction.

■ "[C]riminal offenses requiring no *mens rea* have a generally disfavored status." *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) (citation and quotation omitted). "The existence of *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Dennis v. United States,* 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). Far more than the simple omission of an appropriate phrase from a statute is necessary to justify dispensing with an intent element. *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978); *see also Mance* (scienter inferred in drug offenses in absence of mention of scienter in UCMJ). In the final analysis whether scienter is an element is a question of legislative intent to be construed by the Court. *See United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *see also Morissette v. United States,* 342 U.S. 246, 258, 72 S.Ct. 240, 247, 96 L.Ed. 288 (1952).

■ "Due process requires that adequate notice be given as to what acts constitute a crime and what the penalty may be." *United States v. Ettleson,* 13 M.J. 348, 368 n. 26 (C.M.A.1982). "A statute that fails to give fair notice of punishable conduct violates constitutional due process."[5] *United States v. Scoby,* 5 M.J. 160, 161 (C.M.A.1978) (Cook, J., with two judges concurring in the result). Therefore, courts may infer an element of scienter in order to save criminal statutes from claims that they are constitutionally infirm on Fifth Amendment due process, fair notice grounds. *See United States v. Can-*

*non,* 13 M.J. 777, 778 (A.C.M.R.), *petition denied,* 14 M.J. 226 (C.M.A.1982).

■ "[T]he protections in the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces." *United States v. Graf,* 35 M.J. 450, 460 (C.M.A.1992) (citations omitted). In particular, the Due Process Clause of the Fifth Amendment applies to servicemembers at courts-martial. *Id.; Cooke v. Orser,* 12 M.J. 335 (C.M.A.1982).

■ " '[T]he primary business of' the military is 'to fight or be ready to fight wars should the occasion arise.' " *Heyward,* 22 M.J. at 36 (quoting *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955)). "To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life." *Schlesinger v. Councilman,* 420 U.S. 738, 758, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975). Accordingly, the UCMJ cannot be equated with civilian criminal codes. The UCMJ "regulate[s] aspects of the conduct of members of the military which in the civilian sphere are left unregulated. While a civilian criminal code carves out a relatively small segment of potential conduct and declares it criminal, the [UCMJ] essays more varied regulation of a much larger segment of the activities of the more tightly knit military community." *Parker v. Levy,* 417 U.S. 733, 749, 94 S.Ct. 2547, 2558, 41 L.Ed.2d 439 (1974). Therefore, due to the special needs of the unique military society, a less demanding test for vagueness has been applied to some military offenses than would otherwise be applied to penal statutes prosecuted in state or federal district courts. *Levy; United States v. Tedder,* 24 M.J. 176 (C.M.A.1987).

■ "Nonetheless, penal statutes applicable to servicemembers and military directives intended to govern their conduct must convey some notice of the standards of behavior they require," *Tedder,* 24 M.J. at 180. "It should be abundantly clear that the purpose

---

5. Additionally, a statute making it a crime to fail to carry out a duty cannot be enforced consistent with due process in the absence of proof of probability of knowledge of the duty. *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

of the Uniform Code of Military Justice is not to destroy military discipline, or to make its dictates unduly severe. Its purpose is the improvement of military discipline by the melioration of the administration of justice in the armed services." *United States v. Johnson,* 3 C.M.A. 174, 177, 11 C.M.R. 174, 177 (1953); *see also United States v. Tolkach,* 14 M.J. 239 (C.M.A.1982) (some form of proper publication is necessary before knowledge of a general regulations is presumed in a prosecution for an Article 92(1) violation, or there will be a violation of constitutional due process). Applying the foregoing, we conclude that Congress intended an element of scienter in the Article 92(3) offense of dereliction of duty.[6] The question remains: What level of scienter did Congress intend?

The starting point in determining legislative intent is the language of the statute under which the conviction lies. *United States v. Scranton,* 30 M.J. 322 (C.M.A.1990). "It is an ancient rule of statutory construction that penal statutes should be strictly construed against the government ... and in favor of the persons on whom penalties are sought to be imposed." Sutherland Stat Const § 59.03 (5th Ed). A corollary to the rule of strict construction is the "rule of lenity" whereby ambiguities in penal statutes are resolved in favor of lenity. *Id.*

Statutes that declare conduct criminal or laws that expressly define or limit punishments for any offense are classified as penal. *Id.* at § 59.02. The UCMJ is a penal statute. Rule for Courts–Martial (R.C.M.) 201, MCM, United States, 1984. With an eye to *Levy,* we conclude the UCMJ is generally subject to the rule of strict construction and the "rule of lenity." *See United States v. Schelin,* 15 M.J. 218 (C.M.A.1983).

An unambiguous statute is to be applied, not interpreted. Accordingly, when

no ambiguity is apparent, there is no reason to resort to rules of construction. *United States v. Davis,* 12 C.M.A. 576, 578, 31 C.M.R. 162, 165 (1961). "However, even a penal statute should be construed in a way that will accomplish its obvious purpose." *United States v. Ortiz,* 24 M.J. 164, 168 (C.M.A.1987). To ascertain Congress' purpose we employ the following process: (1) we give all terms their ordinary meaning; (2) if an ambiguity persists, we then examine the legislative history and motivating policies of Congress; (3) if a reasonable doubt remains respecting the statute's intended scope, we then apply the rule of lenity and resolve the ambiguity in favor of the appellant. *United States v. McGuinness,* 33 M.J. 781 (N.M.C.M.R.1991) (citing *Moskal v. United States,* 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990)), *aff'd,* 35 M.J. 149 (C.M.A.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1364, 122 L.Ed.2d 743 (1993). We are also guided by the following rules of statutory construction: (1) a statute will not be dissected and its various phrases considered *in vacuo;* (2) it will be presumed Congress had a definite purpose in every enactment; (3) the construction that produces the greatest harmony and least inconsistency will prevail; and (4) statutes *in pari materia* will be construed together. *United States v. Johnson,* 3 M.J. 361 (C.M.A.1977).

There are only two operative terms in Article 92(3)—"derelict" and "duty." Neither is defined by the Code. The ordinary meaning of "derelict" is "lacking in a sense of duty: remiss, neglectful." [7] Webster's Third New International Dictionary 607 (1971). "Duty" means "function, obligation, task." *Id.* at 705. The duty may be imposed by treaty, statute, administrative regulation, lawful order, standard operating procedure, or custom of the service.[8] *U.S. v. Tanksley,*

---

**6.** We also agree with our Air Force counterparts that Article 92(3) is not constitutionally void for vagueness. *United States v. Rust,* 38 M.J. 726 (A.F.C.M.R.1993).

**7.** A similar definition was considered in *Lawson.* 36 M.J. at 415 n. 7. Additionally, we note the word "dereliction" is defined as an "intentional or conscious neglect (as of principles) § __ of duty>: deviation esp. from conventional con-

duct: delinquency" and as a "fault, shortcoming." Webster's Third New International Dictionary 607 (1971).

**8.** Hence, the duty may, but need not, be imposed by a regulation which itself is not subject to punitive enforcement under the UCMJ. *See generally United States v. Moore,* 21 C.M.R. 544 (N.B.R.1956) (regulations need not spell out in every instance each and every action a service-

36 M.J. 428, 430 (C.M.A.1993) (quoting MCM, 1984, Part IV, ¶ 16c(3)(a), and *United States v. Dallman,* 34 M.J. 274, 275 (C.M.A. 1992)); *Heyward.*

The legislative history of the Code reflects that Article 92(3) is derived from the 96th Article of War and predecessor to Article 134, as well as two articles that were proposed in a bill to revise the Articles for the Government of the Navy. *Hearings on H.2498 Before a Subcomm. of the House Armed Services Comm.,* 81st Cong., 1st Sess. 1226–27 (1949); S. 1338, 80th Cong., 1st Sess. (1947); *Lawson,* 36 M.J. at 419–20. Beyond that, the legislative history is not enlightening.

Given the nature of the Code as the single disciplinary code of the Armed Forces, the custom of comprehensive regulation of the conduct of members of an armed force in the performance of their military duties, these definitions, the aforementioned policies underlying military discipline and the Code, the sources of military duties, and the fact that simple negligence in nonperformance of duty is sufficient for this offense, it is logical that Congress intended the disciplinary process be available to redress not only the negligent omission of duty when the servicemember had actual knowledge of the duty, but also when the servicemember reasonably should have had such knowledge. A scienter of "reasonably should have known" and a *mens rea* of simple negligence are complementary. To suggest Congress intended a servicemember be disciplined for negligence in the performance of his duty, but allow him to advance his own negligence in ascertaining the requirements of that duty, is highly improbable.

Moreover, Congress specified when actual knowledge was required in the balance of Article 92. As to Article 92(2), which punishes failures to obey orders other than general orders, Congress prescribed knowledge of the order as a prerequisite. Such a provision is conspicuously absent in Article 92(1), which punishes violations of general orders, and Article 92(3), which punishes derelictions of duty. We think it entirely proper to read the provisions of Article 92 together: Logi-

member is duty bound to perform under all

cally, Congress intended constructive knowledge as the scienter for Article 92(1) and Article 92(3) violations, and actual knowledge as an element of violations of Article 92(2).

In his early treatise on the Code, General Snedeker specifically addressed the issue of scienter and dereliction of duty. He, too, concluded: "Knowledge of the duty has been imposed is an essential element of the offense [of dereliction of duty]. Such knowledge may be actual or constructive." J. Snedeker, *Military Justice Under the Uniform Code* 618 (1953). Only the MCM, 1984, as originally issued, expressed a view that actual knowledge was a required element of the offense of dereliction of duty. MCM, 1984, Part IV, ¶ 16b(3)(b), 16c(3)(b) (as originally issued). That opinion was based on the "drafters'" view that *United States v. Curtin,* 9 C.M.A. 427, 26 C.M.R. 207 (1958), required actual knowledge. MCM, 1984, Part IV, ¶ 16 Analysis (as originally issued). That opinion of the "drafters" was short lived. Since 1986, the "drafters" have been of the view that either actual or constructive knowledge will suffice. MCM, 1984, Part IV, ¶ 16 Analysis (change 2 of 15 May 1986). The "drafters' analysis" to Change 2 to the Manual explains that the drafters of the original 1984 edition erroneously relied on *Curtin* because the *Curtin* case dealt with Article 92(2) orders violations, not Article 92(3) derelictions of duty. We agree.

We are mindful that the Manual interprets the Article 87 offense of missing movement through neglect to require actual knowledge of the prospective movement of the ship, aircraft or unit, while previous editions of the Manual interpreted the offense of missing movement to require that the accused only have reasonable cause to know of the prospective movement. *Compare* MCM, 1984, Part IV, ¶¶ 11b(2), c(5) *with* MCM, 1969 (rev. ed.), ¶ 166. The Analysis to the current edition of the Manual explains that the change in interpretation is based on *United States v. Chandler,* 23 C.M.A. 193, 48 C.M.R. 945 (1974). We are not called upon, and do not presume, to decide the correctness of *Chandler.* Arguably, the actual knowledge re-

imaginable factual situations).

quirement of missing movement through neglect should be applied to dereliction of duty. Suffice to say, Article 87 was enacted to redress an aggravated form of unauthorized absence, *Hearings, supra* at 1226, and a body of law peculiar to this special offense has evolved.[9]

■■■ Based on the foregoing, we hold that before a servicemember may be punished under the Code for dereliction in the nonperformance of duties, it must be shown that the servicemember had some knowledge of those duties, and such knowledge may be either actual or constructive knowledge. To establish constructive knowledge, it must be shown that the accused reasonably should have known of the duties.[10]

■■■ Although the President does not have the authority to change the nature of crimes delineated by Articles 77 through 132 of the Code, he does have the authority to prescribe maximum punishments pursuant to Article 56, and in doing so he has the discretion to discriminate among levels of culpability, ascribing to one level a greater maximum authorized sentence than another. *United States v. Henry,* 35 M.J. 136 (C.M.A.1992); *United States v. Lingenfelter,* 30 M.J. 302 (C.M.A.1990); *White,* 39 M.J. at 801; UCMJ art. 56, 10 U.S.C. § 856 (1988). As noted above, the President has done precisely that when he authorized a greater punishment for derelictions of duty that are the product of willfulness than those that are the product of simple negligence or culpable inefficiency.[11]

■■■ The rule of strict construction and its corollary, the "rule of lenity," apply to sentencing as well as substantive statutory provisions. Sutherland, *supra* at § 59.03. Therefore, where inconsistent penalties are imposed or where two or more interpretations are possible, the rule of lenity directs the court to choose the less harsh among the choices, and when a statute increasing punishment is capable of two constructions, it should be construed in favor of life and liberty. *Id.* at § 59.04. *See also Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

■■■ Though the sanctions for violating the various offenses defined by the Code have been prescribed by executive order, vice statute, those regulations are also properly classified as penal, and the rules of strict construction and lenity may be applied to them. *See United States v. Williams,* 29 M.J. 112 (C.M.A.1989); *United States v. Clark,* 37 M.J. 1098 (N.M.C.M.R.1993).

■■■ The rule of lenity is invoked only when there is an ambiguity. *National Organization for Women v. Scheidler,* —— U.S. ——, ——, 114 S.Ct. 798, 806, 127 L.Ed.2d 99 (1994); *Moskal; Sutherland, supra* at § 59.03. Therefore, if the regulation promulgating maximum authorized punishments and the terms and definitions pertaining thereto convey an unambiguous meaning, we may not look for or impose a different meaning. *See Clark,* 37 M.J. at 1103. However, "[a]pplying a provision based upon its 'plain meaning' has limitations, and a court should look beyond the words to the purpose of the provision, be it statute or executive order, when the plain meaning leads to an absurd result." *United States v. Sturgeon,* 37 M.J.

9. General Snedeker in his description of the offense of missing movement likewise was of the view that actual knowledge of the prospective movement was required and constructive knowledge would not suffice. Snedeker, *supra* at 585. We are also aware that the Manual and the "drafters' analysis" reflect the opinion that the Article 86(1) and 86(2) offenses of absence from appointed place of duty require proof of actual knowledged of the appointed place and time of duty, and the Article 86(3) offense of unauthorized absence to avoid maneuvers or field exercises requires proof of that the accused actually knew that the absence would occur during a part of a period of maneuvers or field exercises. MCM, 1984, Part IV, ¶¶ 10b(1)(b), 10b(2)(b), 10b(5)(d), 10c(6) & Analysis. We similarly do not view these interpretations of the elements of these offenses to be dispositive of the scienter requirement for the offense of dereliction of duty.

10. "Reasonably should have known" is a sufficiently clear standard to afford a practical guide to permissible and impermissible conduct. *Cf. United States v. McLeod,* 18 C.M.R. 814, 819 n. 3 (A.F.B.R.1955).

11. The enhancement of punishment occurred with the issuance of the 1984 Manual. The two previous Manuals did not provide for enhanced punishment for willful dereliction of duty. Table of Maximum Punishments, MCM, 1951, ¶ 127c and MCM, 1969 (rev. ed.), ¶ 127c.

1083, 1086 (N.M.C.M.R.1993). In addition, we should adopt a construction of the Manual which most accurately reflects the intentions of the President, is more consistent with the structure of the provision, and more fully serves the purposes of the Manual. *Id.*

"Willful ... is a word of many meanings, its construction being influenced by its context." *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943) (federal criminal tax laws). In the context of other criminal laws, it has been interpreted to mean the "voluntary, intentional violation of a known legal duty." *Cheek,* 498 U.S. at 201, 111 S.Ct. at 610. *See also Ratzlaf* (Government must prove defendant knew his conduct was unlawful to establish willful violation of anti-structuring provision of federal banking laws). In the context of the UCMJ offense of dereliction of duty, General Snedeker observed:

> Where the dereliction is alleged to be by willful nonperformance of the duty imposed, actual knowledge that the duty was imposed upon the accused is required. One cannot willfully fail to perform a duty unless he actually knows of the imposition of the duty, understands what is required of him for compliance, and with this knowledge and understanding deliberately omits the performance of the duty.

Snedeker, *supra* at 619. The Military Judges' Benchbook also states that military judges should instruct that knowledge of the assigned duties must be proven when a willful dereliction is alleged, however, when a negligence dereliction of duty is alleged, it must be proven that the accused should have known of the assigned duties. Military Judges' Benchbook, Department of the Army Pamphlet 27–9, ¶ 3–30 (change 2 of 15 October 1986). Previous editions of the Manual were also clear on the point: "When the failure is with full knowledge of the duty and an intention not to perform it, the omission is willful." MCM, 1951, ¶ 171c; MCM, 1969 (rev. ed.), ¶ 171c.

■ After the current Manual was amended to reinstall constructive knowledge, the old, familiar language was not restored. Now the Manual does not specify whether one must have actual knowledge of one's duties in order to be willfully derelict. Now the Manual only provides: " 'Willfully' means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act." MCM, 1984, Part IV, ¶ 16c(3)c). Rather than resolving the potential ambiguity on this point, we believe this definition compounds it. "Willfully" might be interpreted only to apply to acts, not omissions. However, we find it extremely unlikely that the President would elect to enhance punishment on that basis. The consequences of inaction may be more severe than negligent action. Moreover, sentencing authorities would be highly vexed if they were called upon to decide whether one is doing something other than that which he is supposed to do or only omitting to do that which he should do.[12] Nor do we interpret "willfully" as synonymous with "volitionally." The same confusion as to whether the accused's dereliction was volitional would befall the sentencing authority as it would be if it attempted to determine whether the dereliction was an act or omission. More to the point, volition does not suggest a significant basis upon which to discriminate degrees of culpability and amounts of punishment. While it is not our function to judge the prudence of the basis upon which the various levels of enhanced punishment are selected by the President, we may, when ambiguity exists, presume the President intends to discriminate on bases which are most consistent with the purposes of military law and the Manual. See MCM, 1984, Part I, ¶ 3; R.C.M. 102. Only when actual knowledge of the duty is read into the definition of "willfully" does the definition, as a basis for sentence enhancement, achieve the clarity which the President likely intended.

■ In any case, we find the Manual provision on this point ambiguous and therefore resort to the rule of lenity to resolve the ambiguity. Accordingly, we conclude that

---

12. For example, is a substance abuse control officer acting when he retains urinalysis specimens in an unauthorized, unsecured place or is he only omitting to place them in the authorized secure place?

before an accused may be subjected to enhanced punishment for willful dereliction of duty, it must be pled and proven that the accused had actual knowledge of that duty.

*Application.*

The appellant was convicted and sentenced for willful dereliction of duty on the basis of constructive knowledge. As we have stated, the enhanced punishment for willful dereliction is only available when the accused has actual knowledge of the duty. The conviction on the basis of constructive knowledge does not support sentencing for willful dereliction. With an allegation of constructive knowledge, the most the appellant could have been found guilty and sentenced upon is a negligent dereliction of duty. We will modify the findings and reassess the appellant's sentence to correct this error. UCMJ art. 59(b), 10 U.S.C. § 859(b) (1988); see *United States v. Dellarosa,* 30 M.J. 255 (C.M.A.1990).

Accordingly, only so much of the findings of guilty of Charge I and its specifications as finds the appellant guilty of the offense of negligent dereliction of duty are affirmed. The remaining findings of guilty are also affirmed. Upon reassessment in accordance with *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990) and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the sentence is also affirmed.

Judges DECICCO and GUERRERO concur.