UNITED STATES of America

v.

Frank E. MORENO, Electrician's Mate
First Class (E-6), U.S. Navy.

NMCCA 201200005.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 23 Sept. 2011.

31 Jan. 2013.

For Appellant: LT Gabriel K. Bradley, JAGC, USN; LT Toren Mushovic, JAGC, USN.

For Appellee: LT Ian D. Maclean, JAGC, USN; Maj. David Roberts, USMC.

FLYNN, J., delivered the opinion of the court in which PERLAK, C.J., PAYTON–O'BRIEN and MODZELEWSKI, S.JJ., and PRICE, WARD, and McFARLANE, JJ., concur. JOYCE, J., filed a dissenting opinion joined by KELLY, J.

## PUBLISHED OPINION OF THE COURT

FLYNN, Judge:

A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas, of six specifications of indecent acts, two specifications of larceny, two specifications of housebreaking, two specifications of wrongfully taking images of women, one specification of adultery, and four specifications of wrongfully concealing stolen property in violation of Articles 120, 121, 130, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 921, 930, and 934. A panel of officer and enlisted members sentenced the appellant to confinement for two years, reduction to pay grade E–1, total forfeitures, and a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority (CA) disapproved the adjudged forfeitures and deferred and then waived automatic forfeitures for the benefit of the appellant's dependents.

This case was submitted to the court without assignment of error. On 31 August 2012, a three-judge panel set aside the findings of guilty as to the four specifications of concealing stolen property, affirmed the remaining guilty findings and affirmed the sentence. The Government moved for *en banc* reconsideration which the court granted, specifying three issues.[1] On 29 November 2012, the full court heard oral argument.

---

1. 1) Whether the military judge erred in accept-    ing as provident the appellant's plea to conceal-

After carefully considering the record of trial, the parties' briefs, and oral argument, we conclude that the military judge abused his discretion in accepting the appellant's guilty pleas to the four specifications of wrongful concealment of military property under Charge IV. We will reassess the sentence. Following our action, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains.[2] Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

### Factual Background

The appellant's charges of wrongfully concealing stolen property are based on a series of thefts which began approximately seven to eight years ago. In 2005 or 2006, the appellant took a pair of night vision goggles from the force protection locker on board his ship. He put the goggles in his backpack and took them home, intending to keep them permanently. In early 2009, the appellant placed the goggles in his own storage unit, and they were later discovered in 2011 by the Naval Criminal Investigative Service during a search of that storage unit.

Similarly, the appellant took a variety of other items from the ship, including an Hi8 miniature VCR, an EtherFast 5–Port Workgroup Switch, and a flat screen monitor. The appellant was unsure of the dates of his thefts, but testified that these thefts could have been as early as 2004. After stealing the items, the appellant concealed them and ultimately placed them in his storage unit. It is undisputed that the appellant stole each of the items.[3]

### Discussion

■ We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). A decision to accept a guilty plea will be set aside if there is a substantial basis in law or fact for questioning the plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F.2008).

■ Here, we conclude that the military judge abused his discretion in accepting the appellant's guilty plea because it was based on an erroneous view that an actual thief can be criminally liable under Article 134, UCMJ, for concealing stolen property that he in fact stole. Our conclusion draws from ambiguity in paragraph 106 of the MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), Part IV, the President's treatment of this paragraph in earlier versions of the Manual, and applying normal rules of statutory construction.

■ The UCMJ is a penal code subject to the rule of strict construction and the rule of lenity. *United States v. Ferguson*, 40 M.J. 823, 830 (N.M.C.M.R.1994) (citing *United States v. Schelin*, 15 M.J. 218 (C.M.A.1983)).[4] In interpreting the issue before us concerning Article 134, UCMJ, we must take the following path: first, we must give all terms

---

ment of stolen property?

2) Whether an appellant can be convicted of concealment of stolen property when he is the principal who committed the larceny of the same property he thereafter concealed?

3) What is the proper reference point for calculating when the statute of limitations governing the offense of concealment of stolen property in violation of UCMJ Article 134 begins to run and whether there were any factors present in this case that affected the calculation of the statute of limitations?

**2.** In light of our resolution of Issues I and II, we do not reach Issue III.

**3.** In our earlier opinion, we stated that the appellant elected to plead guilty to these four offenses as part of the pretrial agreement, because the statute of limitations for larceny had expired. At trial, the military judge explained to the appel-

lant that a potential statute of limitations defense would exist if he were charged with larceny of these items, but the same statute of limitations would not apply to concealing stolen property due to its continuing nature. Record at 173–74. In light of our decision in this case, we need not decide whether concealing stolen property is a continuous or instantaneous offense, nor do we address the open question of what constitutes concealment for the purpose of this offense.

**4.** *See also United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F.2008) (ordinary rules of statutory construction apply to Rules for Courts–Martial); *United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007) (recognizing that normal rules of statutory construction apply to Manual for Courts–Martial in general and Military Rules of Evidence in particular); *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F.2007) (courts use well-established rules of statutory construction for construing the Manual for Courts–Martial).

used their ordinary meaning; second, if an ambiguity exists, we must examine the legislative history to resolve the ambiguity; and, finally, if after applying the first two steps a reasonable doubt still exists as to the provision's intent, we must apply the rule of lenity and resolve the ambiguity in favor of the appellant. *Moskal v. United States*, 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *see also United States v. Thomas*, 65 M.J. 132, 135 n. 2 (C.A.A.F.2007) (recognizing rule of statutory strict construction and resolving any ambiguity in favor of accused).

Our analysis begins with the language of the enumerated Article 134 offense at issue. If the language is clear, we need not look any further. Paragraph 106 of MCM (2008 ed.), Part IV is entitled "Stolen property: knowingly receiving, buying, concealing."

The elements necessary to prove the offense are:

(1) That the accused wrongfully received, bought, or concealed certain property of some value;

(2) That the property belonged to another person;

(3) That the property had been stolen;

(4) That the accused then knew that the property had been stolen; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM (2008 ed.), Part IV, ¶ 106b.

The use of the disjunctive "or" in the first element indicates that there are three separate ways of committing the offense: receiving, buying, or concealing stolen property. The natural reading of the language is that the Article 134 offense regarding stolen property is a singular offense that may be committed in any one of three ways. Notably, the explanatory section makes no men-

tion of either concealing or buying stolen property. The President only states: "[t]he actual thief is not criminally liable for receiving the property stolen; however, a principal to the larceny ... when not the actual thief, may be found guilty of knowingly receiving the stolen property but may not be found guilty of both the larceny and receiving the property." MCM (2008 ed.), Part IV, ¶ 106c(1). Likewise, the paragraph's definition of wrongfulness provides "[r]eceiving stolen property is wrongful if it is without justification or excuse." *Id.* at ¶ 106c(3). Again, the text is limited to receiving stolen property with no mention of either concealing or buying.

Giving the term "receiving" as it appears in paragraph 106c(1) its ordinary meaning, an actual thief cannot be criminally liable for receiving property he stole, but can be criminally liable for either concealing or buying that very same stolen property. However, applying that ordinary meaning to the definition of wrongfulness in paragraph 106c(3), concealing and/or buying that same stolen property is wrongful irrespective of legal justification or excuse. Thus, an innocent party who buys stolen property intending to return the property to its rightful owner, or a police officer who conceals stolen property as part of an undercover operation would be criminally liable under this construction. We do not believe the President intended such an absurd result.[5]

On the other hand, if the meaning of "receiving" in both paragraphs includes concealing and buying, then the definition of wrongfulness carries no such absurd result. That same innocent party who buys stolen property intending to return it to the rightful owner, or the police officer who conceals stolen property as part of an undercover operation has committed no crime. Because the meaning of "receiving" is subject to multiple interpretations, we find ambiguity. In light of

---

5. This situation is analogous to an enumerated Article when, faced with a question of statutory construction "[u]nless ambiguous, the plain language of a statute will control unless it leads to an absurd result." *United States v. King*, 71 M.J. 50, 52 (C.A.A.F.2012) (citation omitted); *see also United States v. Sturgeon*, 37 M.J. 1083, 1086 (N.M.C.M.R.1993) (court should look beyond

"plain meaning" when construing a statute or executive order when such construction would lead to absurd result); *but see United States v. Bivins*, 49 M.J. 328, 331 (C.A.A.F.1998) (holding Wharton's rule of statutory construction inapplicable to Article 134 offense of bigamy, and suggesting that rules of statutory construction do not apply to Article 134 offenses).

this ambiguity, we expand our inquiry to include the history of this provision and extrinsic sources.

In *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), the Supreme Court discussed the legislative history of 18 U.S.C. § 2113(c), the Federal Bank Robbery Act. The Court noted that it came into law in 1940 and that the Senate Report was captioned "Punishment for Receivers of Loot from Bank Robbers." *Id.* at 419, 79 S.Ct. 451. It further noted that the House Report stated " 'Present law does not make it a separate substantive offense knowingly to receive or possess property stolen from a bank in violation of the Federal Bank Robbery Act, and this bill is designed to cover the omission.' " *Id., quoting* H.R.Rep. No. 1668, 76th Cong., 3d Sess., p. 1. The Court stated, "it seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber. We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery." *Heflin,* 358 U.S. at 419, 79 S.Ct. 451. Continuing, the Court stated, "we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves." *Id.,* at 420, 79 S.Ct. 451.

Likewise, in military law, it appears that paragraph 106 of MCM (2008 ed.), Part IV was designed to fill a gap and punish a separate set of wrongdoers. Military courts that have considered the matter note that the act of concealing stolen property did not constitute a substantive offense at common law, but was addressed by statute in civilian criminal jurisdictions. In *United States v. Banworth*, 24 C.M.R. 795, 1957 WL 4879 (A.F.B.R.1957), the Air Force Board of Review noted that the act of concealing stolen property was encompassed within the common law offense of receiving stolen property. "In other words, receiving was a general classification and the various jurisdictions, in enacting the statutes, separated the acts included in the offense and made each a substantive offense for a clearer determination. The acts set up as separate offenses were *receiving, concealing or buying stolen property.*" *Banworth,* 24 C.M.R. at 797.

Continuing, the Board explained that "[t]he first indication in military jurisprudence that the act of concealing stolen property was considered a distinct offense appeared in the 1951 Manual for Courts-Martial in a suggested form of [an Article 134] specification under the general heading 'Stolen property, knowingly receiving.' " *Id.* at 798 (citing MCM, 1951 ed., App 6c, Model Spec Form 169). Based on a supporting memorandum, the Board determined that the offense was modeled after a Federal statute, 18 U.S.C. § 662. *Id.* (citing Layout of MCM, 1951, Tab 3). "Obviously, the framers of the Manual recognized the several acts set out as offenses in the referred-to section of the United States Code as originally being a part of the offense of receiving stolen property. However, for the purpose, as indicated, of conformance to the Federal act, it was separated into distinct offenses." *Id.*

The offense was first explicitly discussed in the 1969 edition of the Manual. Paragraph 213f(14) was entitled "Receiving Stolen Property." The discussion stated:

"Receiving stolen property" is the receiving, buying, or concealing of any article or thing of value, the property of another person, with knowledge that the article or thing has been stolen.

While an actual thief is not criminally liable for receiving the property he has stolen, one who may be criminally responsible as a principal to the larceny, when not the actual thief (156) can be convicted of knowingly receiving the stolen property under Article 134. Thus, if A procures B to steal several items, agreeing to pay him a certain price for them, and B subsequently steals them and delivers them to A, A can be found guilty of knowingly receiving stolen property despite the fact that his conduct would make him guilty of larceny as a principal.

MCM (1969 ed.), ¶ 213f(14), Discussion.

The analysis of the changes to the 1969 Manual notes only that paragraph 213f(14), Receiving Stolen Property, was new, citing *United States v. Ford,* 30 C.M.R. 3, 1960 WL

4618 (C.M.A.1960) and *United States v. Herndon*, 4 C.M.R. 53, 1952 WL 2685 (C.M.A.1952). Department of the Army Pamphlet No. 27–2 (July 1970). *See also* 23 JAGJL 43, Punishments and the Punitive Articles, CAPT Joseph E. Ross, JAGC, USNR (1968) (noting that nearly all changes to the chapter on punitive articles were made to bring the Manual in line with court decisions).

Thus, the early history of this provision reflects that the offense of concealing stolen property originated with, and is closely related to, receiving stolen property. *See United States v. Bonavita*, 45 C.M.R. 181, 1972 WL 14149 (C.M.A.1972). The President went even farther in 1969 by specifically including the acts of concealing and buying in the definition of "receiving". *See* MCM (1969 ed.), ¶ 213f(14), Discussion. In examining the later history of this paragraph, we find no reason to depart from this interpretation.

In *United States v. Cartwright*, 13 M.J. 174, 176 (C.M.A.1982), the Court of Military Appeals surveyed various federal statutes and concluded that, "absent a clear legislative intent to the contrary, theft and receiving are inconsistent offenses, even when the taking and the receiving of physical possession are not contemporaneous" and found no evidence that Congress intended a different rule for courts-martial. The court noted that "[W]hile, due to exigencies of proof, a person found in possession of recently stolen property frequently is charged both with the larceny of that property and with receiving it . . . the trier of fact need not be allowed to convict the accused on both charges." *Id.* at 177–78 (footnote omitted). Moreover, the court distinguished that situation from the one faced by our court in *United States v. Cook*, 7 M.J. 623 (N.C.M.R.1979), where we held a plea of guilty to receipt of stolen property by concealing that property improvident because the accused had personally participated in taking some of the stolen property. Notably, *Cook* involved a case similar to the instant matter, where the stolen property was concealed by the thieves themselves.

In *Cartwright*, the court found that the "draftsmen's analysis of paragraph 213f(14) does not suggest that the well-established rules as to the inconsistency of the two offenses was being curtailed" and that

> the language of paragraph 213f(14) gives absolutely no indication that the President intended, in the language of *Heflin v. United States, supra*, "to multiply the offense of the . . . robbers themselves." As the paragraph was promulgated several years after our decision in *United States v. Ford, supra*, which specifically reserved the question, and after the Supreme Court's decision in *Milanovich v. United States, supra*, which relied on legislative intent, we feel sure that, if this had been the President's intent, the Manual would so reflect.

*Cartwright*, 13 M.J. at 177.

Following this same logic, in examining the 1984 Manual, which was issued only two years after *Cartwright*, we find that, if the President wanted to authorize different treatment for the act of concealing stolen property from that of receiving, he could have done so. Instead, the 1984 edition, which made broad changes to many other sections, made only two minor revisions to this paragraph, neither of which establishes a clear intent to depart from the earlier definition of "receiving" in the 1969 Manual. The 1984 Manual removed the definition of receiving stolen property altogether and changed the caption of the offense from "Receiving Stolen Property" to "Stolen property: knowingly receiving, buying, concealing," the same as it exists today. The removal of this definition is unexplained as the Analysis to the 1984 Manual simply states: "[paragraph 106, "Stolen property: knowingly, receiving, buying, concealing"] is based on paragraph 213f(14) of MCM, 1969 (Rev.) . . . ." MCM (1984 ed.), App. 21–104.

We conclude that these minor changes to paragraph 106 in the 1984 Manual are insufficient to show an executive intent to depart from the earlier inclusive definition of "receiving" in the 1969 Manual.[6] Certainly by

---

6. Other than a change in calculating maximum punishment, paragraph 106 has remained un-

changed since the 1984 revision. *See* MCM (2008 and 2012 eds.), Part IV, ¶ 106.

omitting the inclusive definition of "receiving" from the 1984 Manual, one could argue that the President intended to limit the exemption from criminal liability solely to act of "receiving". However, the Analysis to the 1984 Manual seemingly contradicts that argument when it cites the same paragraph from the 1969 Manual without exception. Moreover, the 1984 Manual clearly envisions an inclusive meaning to the term "receiving" in the definition of wrongfulness. Last, even if we ignore the inclusive context in the 1984 Manual's definition of wrongfulness, we note that "where there is some ambiguity growing out of congressional [or in this case, Presidential] silence under the circumstances, the doubt must be resolved in the favor of lenity." *Cartwright,* supra, 13 M.J. at 176 n. 4 (citations and internal quotation marks omitted); *see also United States v. Ferguson,* 40 M.J. at 823, 830 (N.M.C.M.R.1994) (where penal statute is ambiguous, normal rule of strict construction gives way to rule of lenity). Thus, we resolve this ambiguity in favor of the appellant.

Accordingly, we conclude, as we did in *Cook,* that "the military prohibition against [concealing stolen property] is uniformly inapplicable to the person who stole the property." *Cook,* 7 M.J. at 626. We find that there is a substantial basis in law to question the appellant's guilty pleas to the four specifications of wrongfully concealing military property under Charge IV. *Inabinette,* 66 M.J. at 322.

As a result of our decision, we reassess the sentence in accordance with the principles of *United States v. Moffeit,* 63 M.J. 40, 41–42 (C.A.A.F.2006), *United States v. Cook,* 48 M.J. 434, 437–38 (C.A.A.F.1998), and *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A. 1986). Although our action on findings changes the sentencing landscape, the change is not sufficiently dramatic so as to gravitate away from our ability to reassess. *United States v. Buber,* 62 M.J. 476, 479 (C.A.A.F.2006).

The appellant remains convicted of a multitude of serious offenses, including six specifications of indecent conduct, two specifications of larceny, two specifications of housebreaking, two specifications of wrongfully taking images of unsuspecting women, and one specification of adultery. We conclude that, absent the error, the panel would have imposed, and the convening authority would have approved, the same sentence previously adjudged and approved.

Therefore, we set aside the finding of guilty to Specifications 50, 51, 52 and 53 of Charge IV, and affirm the remaining findings. We affirm the sentence as approved by the CA.

Chief Judge PERLAK, Senior Judges PAYTON–O'BRIEN and MODZELEWSKI, and Judges PRICE, WARD, and McFARLANE concur.

JOYCE, Judge (dissenting).

Believing that, under these facts, the military judge did not abuse his discretion, I respectfully dissent.

I agree with the majority that when interpreting provisions of the Uniform Code of Military Justice, including enumerated Article 134 offenses in the MANUAL FOR COURTS-MARTIAL, UNITED STATES, we must begin with the ordinary meaning of all statutory text.[7] Only if the meaning is ambiguous do we reach out for other interpretive sources. I respectfully disagree that there is any ambiguity in this case.

The elements defined in subsection (b) of Paragraph 106 of the MCM list three ways in which Article 134 may be violated with respect to stolen property: receiving, buying, or concealing. The ordinary meanings of these three words are quite different, and require no explanation. "An unambiguous statute is to be applied, not interpreted." *United States v. Ferguson,* 40 M.J. 823, 830 (N.M.C.M.R.1994). Nonetheless, we find ourselves engaged in the process of interpretation, from which the majority emerges having concluded that receiving subsumes both buying and concealing, at least with respect to the question of whether a thief can violate this paragraph at all. Of course, that is not

---

7. *United States v. Lewis,* 65 M.J. 85, 88 (C.A.A.F. 2007) (courts use well-established rules of statutory construction for construing the Manual for Courts-Martial).

the ordinary meaning of "receiving," so the majority opinion has, in effect, assumed that the word is ambiguous in order to give it a broader meaning than it usually carries.

The majority rightly notes that neither the text of Paragraph 106 nor any other provision directly answers the central question in this case: whether a thief can be convicted of concealing his stolen property. But silence is not ambiguity. *Albernaz v. United States,* 450 U.S. 333, 340–41, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The President does not bear a burden to imagine and answer every question that may arise under the enumerated paragraphs of the Manual for Courts–Martial. He has the burden to provide notice to service members of prohibited conduct, and to write non-multiplicious offenses if he intends for them to be prosecuted together. He has done both here.[8]

The majority assigns the President a higher burden for two stated reasons. First, it reads the explanatory paragraphs in subsection (c), not the elements in subsection (b), to suggest a Presidential intent that the word "receiving" includes buying and concealing. Second, it considers this broad reading of "receiving" to be an historical baseline which the President has not adjusted in the text of the Manual. I am not persuaded by the evidence supporting either conclusion, so I would hold that receiving and concealing are quite different, and a rule that applies to the former should not automatically apply to the latter.

It is unclear why subsection (c) features so prominently in the majority's analysis. Manual explanations are not binding on appellate courts. *United States v. Miller,* 47 M.J. 352, 356 (C.A.A.F.1997). While they are persuasive, I would not afford an explanatory sub-

section the power to distort the normal meaning of words, especially when they can be read more modestly. The majority sees that the President only explained the wrongfulness of receiving, and takes that as evidence that receiving must include buying and concealing as well, or else there would be an "absurd result" that non-wrongful buying and concealing would be criminalized. But this is not necessarily so. The word "wrongfully" modifies all three forms of the offense in subparagraph (b), which establishes the elements. If there was any doubt about whether "wrongfully" would prevent the criminalization of Good Samaritanism and undercover police work, as the majority fears, courts could read subsection (b)'s use of the term "wrongful" *in pari materia* with the rest of the UCMJ. *Ferguson,* 40 M.J. at 830.[9]

Having concluded that an explanatory subparagraph creates an unusual textual ambiguity, the majority reaches for historical sources to decide whether the offense of receiving includes concealing, and finds that it does because of their common origin. But the history is not so clear, and it certainly does not justify departing from the ordinary meaning of the words in the enumerated offense.

The majority's survey of history includes three important episodes with respect to receiving stolen property. First, a military appellate court considered receiving and concealing to be "distinct offenses" as early as 1957. *United States v. Banworth,* 24 C.M.R. 795, 798, 1957 WL 4879 (A.F.B.R.1957). Then, in the 1969 MCM, the word "receiving" was defined as including concealing. Had that definition survived to the present day,

---

**8.** Although multiplicity is not the issue in this case, it is an instructive lens through which to examine the question at hand because the test from *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is a form of statutory construction. If two statutes pass *Blockburger,* there is a presumption that they may be prosecuted together, absent any legislative intent to the contrary. *Albernaz,* 450 U.S. at 340, 101 S.Ct. 1137. I would extend the same presumption to enumerated paragraphs under Article 134, once it is clear that the paragraph and the other offense in question each have a separate element. In this case, where there is no

multiplicity problem because the Government only pursued one of the offenses, I still consider the lack of multiplicity to be evidence that the drafters did not view larceny and concealment to be overlapping offenses. We know that they considered receiving and larceny to overlap because they said so in Paragraph 106.

**9.** A second reason not to fear the majority's "absurd result" scenarios is that neither example would be prejudicial to good order and discipline or discrediting to the service.

this question would be far simpler. However, while the distinction became somewhat blurred, the 1984 MCM definition of receiving omitted any reference to buying and concealing, and that definition has appeared in each subsequent edition. Although the majority declines to "depart" from the 1969 definition of "receiving," that definition departed from the MCM 15 years later in 1984.[10]

It is also worth noting that federal prosecutors can choose between larceny and receiving or concealment offenses. *See United States v. Gaddis,* 424 U.S. 544, 550–51, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976) *and Milanovich v. United States,* 365 U.S. 551, 555, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). When they choose only receiving, they need not litigate whether the accused was the actual thief; they must only prove the elements of the receiving offense. *Gaddis,* 424 U.S. at 550 n. 15, 96 S.Ct. 1023; *see also United States v. Bracken,* 558 F.2d 544, 545 (9th Cir.1977). Even *Heflin,* cited by the majority, deals with preventing multiple convictions, not convictions for either stealing or receiving or concealing. 358 U.S. at 419–20, 79 S.Ct. 451. While these cases involve questions of federal law, they are decided against the same common-law backdrop referenced in the majority opinion, and they come out differently.

Finding Paragraph 106 to be unambiguous on its face, and being unconvinced by the majority's application of other interpretive sources, I would not apply the rule of lenity in this case. Lenity is reserved for cases when it is truly difficult to know the meaning of a textual provision, even after resort to other sources. *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). Here, the other sources do not change the meaning that is plain at first glance: receiving, buying, and concealing are all different offenses. At most, the majority's analysis proves that another, arguably more strained interpretation is possible; but we should "decline[ ] to deem a statute 'ambigu-

ous' merely because it was *possible* to articulate a construction more narrow than that urged by the Government." *Id.*

The President's language, given its ordinary meaning, is clear, even against an historical backdrop that links the offenses of receiving and concealing stolen property. For no aspect of that history links them on the question whether a thief deserves the protection from prosecution for both offenses. Answering that question in the affirmative requires a logical leap that neither the text nor the history support. The military judge did not abuse his discretion in accepting the appellant's guilty plea because the appellant pled guilty to hiding Government property several years after he stole it, with the express purpose of avoiding detection. The elements of the offense to which he pled guilty did not require the property to be stolen by another.

In examining the materials before us, I conclude that paragraph 106 of the MCM unambiguously applies to the appellant's conduct in this case.

### Concealment is a Continuing Offense

With an unambiguous offense, the next issue is whether concealing stolen property is a continuing offense. I conclude that it is.

"The continuing offense doctrine ... is purely a matter of statutory interpretation, and is limited to situations in which Congress explicitly stated that the offense was a continuing one, or the nature of the crime compels the conclusion that Congress must have intended it." *United States v. Kuemmerle,* 67 M.J. 141, 146 (C.A.A.F.2009) (citations omitted).

Our court has been hesitant to find a continuing offense in an Article 134 offense where the statute is silent, *see, e.g., United States v. Lee,* 32 M.J. 857 (N.M.Ct.Crim.App. 1991), but *Kuemmerle* allows for it if the "nature of the crime" can "compel[ ] the conclusion" that it is a continuing offense. 67

---

**10.** It is due to this change that I find *United States v. Cartwright,* 13 M.J. 174 (C.M.R.1982) and *United States v. Cook,* 7 M.J. 623 (N.C.M.R. 1979) to be irrelevant to this case. Both relied on the 1969 MCM, with *Cook* explicitly citing to the now-obsolete link between receiving and con-

cealing, 7 M.J. at 624. In addition, *Cartwright* addresses the question of multiple convictions; it does not hold nor even suggest that a thief cannot be convicted in accordance with his pleas of guilty of concealing stolen property.

M.J. at 146. The Fourth Circuit reached exactly this result in a case dealing with the concealment of Government property by an Army Lieutenant Colonel. *United States v. Blizzard*, 27 F.3d 100 (4th Cir.1994). The court held that "[s]tolen government property is not unlike contraband. The passage of time does not give the defendant a license to possess it. The Government may prosecute a person who continues to possess unlawful drugs irrespective of the date he first possessed them." *Id.* at 102. Therefore, I would hold that concealing stolen property is a continuing offense and that the statute of limitations had not run in this case.

Judge KELLY joins in the dissent.