*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and GANNON
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Bryce S. PEDICINI**
Chief Fire Controlman Aegis (E-7), U.S. Navy
*Appellee*

**No. 202400232**

_____

Decided: 13 February 2025

Appeal by the United States Pursuant to Article 62, Uniform Code of
Military Justice

Military Judge:
Andrea K. Lockhart

Arraignment 13 February 2024, trial 9-19 April 2024, and sentencing
28-29 May 2024, before a general court-martial tried at Naval Base San
Diego, California, consisting of military judge alone.

For Appellant:
*Lieutenant Commander James P. Wu Zhu, JAGC, USN*
*Major Mary Claire Finnen, USMC*

For Appellee:
*Ms. Daphne Silverman, Esq.*
*Lieutenant Colonel Todd F. Eslinger, USMC*

Senior Judge KIRKBY delivered the opinion of the Court, in which Chief Judge HOLIFIELD joined. Judge GANNON filed a separate dissenting opinion.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

KIRKBY, Senior Judge:

Appellee was convicted, contrary to his pleas, of numerous charges and specifications including violations of Articles 90, 92, and 103(a) of the Uniform Code of Military Justice [UCMJ].[1]

The Government filed an interlocutory appeal pursuant to Article 62, UCMJ, on the issue of whether the military judge abuse her discretion when, during the announcement of findings, she made no findings as to Specifications 2, 3, 4, 6 and 7 of Charge IV and instead dismissed them for unreasonable multiplication of charges. We do not reach this issue because the Government failed to provide timely notice of appeal. Therefore, we lack jurisdiction and the Government's appeal is dismissed.

## I. BACKGROUND

Appellee, having pleaded not guilty to various charges and having elected to be tried by military judge, was tried by general court-martial. Prior to entry of pleas, he filed a motion to dismiss certain charges based on an unreasonable multiplication of charges. The military judge denied that motion. The trial commenced on 9 April 2024. On 19 April 2024, the military judge, during entry of findings, in relevant part stated: "[f]or Charge IV, Article 134: Specifications

———

[1] 10 U.S.C. §§ 890, 892, 903(a).

Appellee was sentenced at proceedings that took place contemporaneously with the Article 62, UCMJ, appeal here. That sentencing phase of the trial was completed for the charges unaffected by the issue before us now.

2 through 4 and 6 through 7 are conditionally dismissed pending appellate review."[2]

Shortly after the findings were entered the court recessed and various conferences were held pursuant to Rule for Courts-Martial (R.C.M.) 802. The military judge summarized the relevant portion of those conferences during the next Article 39(a) session on 28 May 2024 as follows:

> . . . and we were discussing the announcement of pleas—actually, I believe we had two 802's, and I believe the first one we did talk about –we talked about the –I apologize because it's just coming into my brain now. We talked about the announcement of how certain pleas [sic] were announced; and then we had the second one, which is how the conditionally-dismissed language appeared. And so we had a lengthy discussion about the language having to do with Charge IV and those specifications that the court noted were conditionally dismissed. . . and that we would set another hearing to discuss it, and that I would allow both sides time to provide a brief if they so desired. . . There is certainly more detail, but that's the generalities of what we discussed.[3]

Neither the Government nor trial defense counsel elaborated on these R.C.M. 802 conferences on the record.

On 19 April 2024, trial counsel contacted the military judge via email and stated: "memorializing the 802 we just had that confirmed there has been no ruling on the 'conditional dismissal' issue so [the] Government is not on any clock for appellate purposes."[4] The military judge responded three days later: "That is correct. I have given both sides time to brief the issue to the court. . . ."[5]

---

[2] R. at 10.

[3] R. at 15–16.

[4] Appellant's Motion to Attach, 9 September 2024, Appendix A [App'x A] at 1.

[5] App'x A at 1.

The court was called to order again on 28 May 2024. During the discussion of the "conditional dismissal" the military judge stated: "they [the specifications under Charge IV] were dismissed pursuant to defense's motion, which was filed . . . before presentation of evidence."[6]

On 29 May, the Government filed written notice of appeal under R.C.M. 908.[7]

On 7 June, the military judge entered "Findings of Fact and Conclusions of Law on Defense Motion to Dismiss Unreasonably Multiplied Charges." Therein the military judge stated: "The [c]ourt dismissed specifications 2, 3, 4, 6 and 7 of Charge IV pursuant to the defense's motion for unreasonable multiplication of charges."[8]

On 24 June, the Government filed this interlocutory appeal with the Court.

## II. STANDARD OF REVIEW

The authority to review a Government appeal, as in this case, is provided by Article 62, UCMJ, which subjects certain decisions made by a military judge to an interlocutory Government appeal.[9] Article 62 authorizes the Government to appeal *inter alia* "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification."[10]

"Government appeals in criminal cases are disfavored and may only be brought pursuant to statutory authorization."[11] Precedent demands that we review any authorization of a Government appeal within the context that, as an Article I court, we are a court of limited jurisdiction, and we must exercise

---

[6] R. at 19.

[7] There is an unresolved question as to whether this "notice of appeal" complies with both Article 62 and R.C.M. 908, as it is, by its own terms, a notice of intent to ask for an appeal rather than an actual appeal. For the purposes of this case, we will assume that this notice complies with Article 62 and R.C.M. 908 and we leave for another day whether a notice of intent to ask for an appeal satisfies the requirements of Article 62 and R.C.M. 908.

[8] Appellant's Motion to Attach, 9 September 2024, Appendix C [App'x C] at 2, 7, 8, 9, and 13.

[9] 10 U.S.C. § 862.

[10] 10 U.S.C. § 862(a)(1)(A).

[11] *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017).

our jurisdiction in "strict compliance with authorizing statutes."[12] Accordingly, this Court must first "satisfy itself that it has jurisdiction."[13]

The plain language of Article 62(a)(1), confers appellate jurisdiction only for orders or rulings that actually meet specified criteria. The language of Article 62 is not ambiguous: it provides that the Government may appeal certain kinds of rulings by a military judge[14] and it must do so in both a specific temporal window[15] and with specific certifications.[16] That is, Article 62 authorizes the Government to appeal an order or ruling which terminates the proceedings with respect to a charge or specification. In order to effectuate an interlocutory appeal under Article 62, a Government trial counsel must submit both a written notice of appeal to the military judge within seventy-two hours of the military judge's ruling, and a certification that the appeal is not taken for purpose of delay and that the evidence excluded is substantial proof of a fact material in the proceeding.[17]

The essential point is that when a charge or specification is dismissed by a military judge, the Government's Article 62 clock starts to run. Within the prescribed seventy-two hours the Government must, if it wishes to preserve its interlocutory appeal, file a written notice in compliance with subsection (a)(2)(A) of Article 62. If, during the prescribed seventy-two hours the Government seeks reconsideration pursuant to R.C.M. 905(f), then the 72-hour clock is tolled pending a ruling on that motion. (The military judge's decision to both reconsider and reverse a ruling, pursuant to R.C.M. 905(f) would obviously negate the need for appeal of the dismissal). At the trial level this timing sequence is unique to Article 62 and the Government's right to appeal therein, and may be triggered at various stages of the trial process, or during pretrial or post-trial motions sessions or proceedings.

During the pendency of such an appeal, the related proceedings of the court are stayed by operation of law.[18] The interlocutory appeal is then forwarded to

---

[12] *Ctr. for Constitutional Rights v. United States*, 72. M.J. 126, 128 (C.A.A.F. 2013).

[13] *Jacobsen*, 77 M.J. at 85. *See also United States v. Badders*, 82 M.J. 299, 302 (C.A.A.F. 2022)

[14] 10 U.S.C. § 862(a)(1)(A)-(G).

[15] *Id.* § 862(a)(2)(A).

[16] *Id.*

[17] *Id.*

[18] R.C.M. 908(b)(4).

the court of criminal appeals for the service involved[19] and that court is required to prioritize its review of the matter.[20]

## III. DISCUSSION

This case highlights the complex and intertwined nuances of the UCMJ and the timelines and requirements that different decisions or actions have on different parties. At issue is the question of when did the Article 62 clock start for the Government? This calculation touches on various rules and statutorily established events.

In this case, the initial confusion, at least on the part of the Government,[21] came when, while entering findings, the military judge stated, "For Charge IV, Article 134: Specifications 2 through 4 and 6 through 7 are conditionally dismissed pending appellate review."[22] This statement was neither a general finding nor a dismissal of the charges in strict compliance with R.C.M. 907.[23] Rather it appears to be a comingling of the concerns found in R.C.M. 907(b)(3)(B)'s discussion[24] and a simultaneous attempt to satisfy R.C.M. 906(b)(12)(A). What is clear is that the specifications were dismissed. The proceedings with regard to Specifications 2 through 4 and 6 through 7 of Charge IV were terminated, which neither side disputed at the time. The announcement, regardless of later R.C.M. 802 conferences, bench briefs or other actions shy of reconsideration pursuant to R.C.M. 905(f) by the court, terminated the proceedings as to those specifications. That termination had two relevant effects: (1) it allowed the Government to appeal the ruling under Article 62 and (2) started the Government's statutory clock for filing such an appeal.

---

[19] 10 U.S.C. § 862(b).

[20] *Id.*

[21] R. at 19.

[22] R. at 10.

[23] *See* R.C.M. 918.

[24] *See* R.C.M. 907(b)(3)(B) Discussion ("Ordinarily, a specification should not be dismissed for multiplicity before trial unless it clearly alleges the same offense, or one necessarily included therein, as is alleged in another specification. It may be appropriate to dismiss the less serious of any multiplicious specifications after findings have been reached. Due consideration must be given, however, to possible post-trial or appellate actions with regard to the remaining specifications.").

The Manual for Courts-Martial's discussion of R.C.M. 907 states an obvious but essential point: "[d]ismissal of a specification terminates the proceedings with respect to that specification unless the decision to dismiss is reconsidered and reversed by the military judge." Yet, in the case at hand, the Government waited until 29 May 2024 to submit its first filing indicating an intent to appeal the military judge's ruling. That filing, captioned as "GOVERNMENT'S WRITTEN NOTICE OF APPEAL UNDER R.C.M. 908" was filed one day after the court was reconvened following a thirty-eight-day recess. The record before us indicates a number of R.C.M. 802 conferences were held in-person and telephonically during that recess.[25] While there is ample discussion, argument and explanation regarding the announcement of Specifications 2, 3, 4, 6, and 7 of Charge IV, the record does not contain any evidence of any discussion of reconsideration. There is no request for reconsideration in the limited file before us and there is nothing indicating a reversal or reconsideration of the ruling of April 19 by the military judge.

In order to fully examine both the military judge's ruling and the Government's response, we must highlight certain events that occurred. On 19 April 2024 trial counsel contacted the military judge via email and stated:

> Memorializing the 802 we just had that confirmed there has been no ruling on the "conditional dismissal" issue so Government is not on any clock for appellate purposes.[26]

On 22 April, the military judge responded: "That is correct. I have given both sides time to brief the issue to the court. . . ."[27]

It has long been established that the United States cannot appeal in a criminal case without express congressional authorization.[28] Since prosecution appeals are statutory creatures, their life and sustenance are found in the parent statute.[29] "The statutes authorizing such appeals are strictly construed against

---

[25] R. at 15–17.

[26] App'x A at 1.

[27] App'x A at 1.

[28] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977) (citation omitted).

[29] *United States v. Pearson*, 33 M.J. 777, 779 (N.M.C.M.R. 1991) (citing *United States v. Sanges*, 141 U.S. 310 (1892)).

the right of the prosecution to appeal."[30] However, "[t]hey are not so strictly construed . . . as to defeat the intent of the legislature in authorizing the procedure."[31] Accordingly, when no ambiguity is apparent, there is no reason to resort to rules of construction.[32] This principle is applicable to the Rules for Courts-Martial, as well as the UCMJ.[33] We do not read the inclusion of Article 62(e), a directive to "liberally construe" Article 62, as either expanding the 72-hour window, or permitting the negotiation of the start time of that period. Therefore, following established precedent, we hold that written notice of appeal to the trial court within seventy-two hours under Article 62 and R.C.M. 908 is mandatory; that a military judge is without authority to extend the period of time for that notice;[34] and, that, in the absence of timely notice, a service court of criminal appeals is without jurisdiction to entertain a government appeal unless the military judge has denied the government the opportunity to provide the notice.[35]

Based on the record before us there is nothing on May 28 that constitutes an order or ruling that terminated the proceedings with respect to Charge IV or the specifications in question.[36] At best it is a clarification of what the military judge did at the previous court session, a discussion of the impact of the double jeopardy prohibition, and an explanation of the basis of her previous ruling. The record indicates that by the close of conversation the military judge had clarified:

> the court erred on using the term 'conditionally dismissed' in
> that context as interviewed [sic] government applied it to a

---

[30] *United States v. Flores-Galarza*, 40 M.J. 900, 905 (N.M.C.M.R. 1994) (internal quotations omitted).

[31] *Id.* (quoting *Pearson*, 33 M.J. at 779) (internal quotations omitted).

[32] *United States v. Davis*, 12 C.M.A. 576, 578, 31 C.M.R. 162 (1961).

[33] *See United States v. Ferguson*, 40 M.J. 823, 833 (N.M.C.M.R. 1994); *see also United States v. Clark*, 37 M.J. 1098, 1102-03 (N.M.C.M.R. 1993) ("Though R.C.M. 701 is a creature of executive order, the principles of statutory construction may be applied to it.").

[34] We recognize that motions to reconsider, authorized pursuant to R.C.M. 905(f), may impact this timing sequence.

[35] *Flores-Galarza*, 40 M.J. at 905. *Cf. United States v. Hark*, 320 U.S. 531 (1944) (interpreting the Criminal Appeals Act, now 18 U.S.C. § 3731 (1988), upon which Article 62 is modeled).

[36] *See* R.C.M. 801(f).

guilty finding, which there [sic]. The court meant that they were dismissed pursuant to the defense's filed motion until the appellate process was complete.[37]

We disagree with the dissent's view that this statement, read liberally in accordance with Article 62(e), amounts to a ruling that terminated the proceedings regarding the specifications in question. Such liberal interpretation would essentially render Article 62 as meaningless guidance, subject only to the government counsel's ability to elicit vague comment from a military judge. We are further convinced that the May 28 conversation did not amount to a ruling on the specifications in question by the language used by both the military judge and trial counsel. Almost without exception they both refer to the ruling in the past tense, in that the "specifications *were* dismissed,"[38] thus indicating that both understood the action to already have occurred. We are cognizant that "courts have held that, when it is not clear that a district court order has resolved an issue, the time for filing a notice of appeal runs from the subsequent order that unambiguously does so."[39]

On 29 May, the Government filed notice of appeal stating that "On 28 May 2024 at 1000 hours, this court handed down a ruling order[ ] that terminated the proceedings with respect to a certain Charge and Specifications thereunder."[40] We find no such order or ruling in the record of 28 May. It would be contrary to the clear and well established intent of Congress in Article 62 to ignore the rulings made on 19 April and then so liberally read the record before us to contain language that terminated the proceedings with respect to Specifications 2, 3, 4, 6 and 7 of Charge IV on 28 May. And, we decline to do so. While the dissent focuses on the concept that the military judge's clarification ("[i]t would have been more accurate to say they were dismissed without prejudice pursuant to the defense's motion"),[41] the Government appeal specifically asks us to consider:

> Did the Military Judge abuse her discretion when *during her announcement of findings*, she made no findings on specifications 2 to 4, 6 and 7 of charge IV and instead dismissed them for

---

[37] R. at 41.

[38] *See* R. at 19, 30, 39, 41,

[39] *United States v. Cos*, 498 F.3d 1115, 1122 (10th Cir. 2007) (citations omitted).

[40] App'x A at 1.

[41] R. at 39.

> unreasonable multiplication of charges and multiplicity under
> the erroneous belief that double jeopardy would not bar retrial?

It is clear from the Government's brief that it was focused on the military judge's abuse of discretion "during announcement of findings" on 19 April, not her 28 May clarification. If there were on-going "proceedings" regarding the dismissed specifications, it was to determine whether jeopardy had attached—not whether they were dismissed.

On 7 June the military judge entered "Findings of Fact and Conclusions of Law on Defense Motion to Dismiss Unreasonably Multiplied Charges." Therein the military judge stated in part that "On 19 April, 2024 . . . [t]he court dismissed specifications 2, 3, 4, 6, and 7 of Charge IV pursuant to the defense's motion for unreasonable multiplication of charges."[42] The written ruling makes no mention of any ruling being given or any order entered on 28 May. Rather, the military judge wrote:

> On [28] May 2024, the court received argument from the government on its bench brief and read into the record its reasoning for *dismissing the specifications on the record on 19 April 2024.*[43]

This reaffirms our understanding that the military judge made no ruling or order at the hearing that was anything more than a restatement of her ruling of 19 April.[44]

---

[42] App'x C at 1.

[43] App'x C at 7 (emphasis added). We also note that the written ruling originally references "29" May but the record of trial before us indicates this hearing occurred on 28 May 2024.

[44] In her 7 June ruling the military judge, in a paragraph titled, "**Ruling,**" stated:

> For the reasons stated above, the defense Motion is GRANTED in part,
> as specifications 2, 3, 4, 6 and 7 of Charge IV are dismissed.

This line arguably amounts to "An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." And the Government would have had at least a colorable argument that its 72-hour clock started upon issuance of this ruling. Alas, while the Government had filed a notice of appeal with the trial court on 29 May, we find no authority for anticipatory filings of Article 62 appeals and leave it to our superior court or Congress to create such a beast. And, while the Government filed an interlocutory appeal with this Court on 24 June 2024, that filing fails to satisfy the 72-hour requirement that expired sometime on 10 June.

In this case, liberally construing Article 62 and applying a filing start time based on a "subsequent order that unambiguously"[45] resolved any earlier lack of clarity from the trial court, does not save the Government. The military judge's ruling on 7 June would be the start point under this theory.

We hold that the findings by the military judge on 19 April 2024 with regard to Specifications 2, 3, 4, 6, and 7, of Charge IV amounted to a ruling that terminated the proceedings with respect to those specifications. The Government had seventy-two hours within which to file a notice of appeal. It failed to do so.[46] While the Government may have relied on the military judge's 22 April response to its email of 19 April, it did so at its peril. Neither the R.C.M. 802 conferences nor the military judge could extend that statutory time beyond 22 April 2024; and neither the post 22 April filing of a notice of appeal nor the actual filing of an appeal could revive the expired period.

Therefore, this Court lacks jurisdiction to hear this appeal. The stay of court proceedings in this case related to these specifications, automatically imposed under R.C.M. 908(b)(4) by the filing of a notice of appeal, is hereby lifted.

## IV. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that we lack jurisdiction take action requested by the Appellant. Appellant's appeal is **DISMISSED.** The stay of proceedings is **LIFTED**. The record is forwarded to the Judge Advocate General for return to the convening authority.

---

[45] *Cos*, 498 F.3d at 1122.

[46] We are cognizant of Article 62(e) but find no facts within the record before us to support a contention that the military judge's ruling on 19 April 2024 was not the event that terminated the proceedings with regard to the specifications in question.

J. GANNON, dissenting:

I respectfully dissent. I would have found that this Court has jurisdiction to hear the Government's Article 62, UCMJ, appeal. For the reasons discussed below, I would find that the military judge terminated the proceedings with respect to Charge IV, Specifications 2, 3, 4, 6 and 7 on 28 May 2024. Accordingly, I would find that the Government's notice of 29 May 2024 was timely and in compliance with the Article 62(a)(2)(A) seventy-two hour notice requirement.

A brief recitation of the timeline of events is illustrative of my position.

On 11 March 2024, trial defense counsel moved to dismiss seven Specifications of Charge III as an unreasonable multiplication of charges with seven Specifications of Charge IV.[1]

On 18 March 2024, at an Article 39(a), UCMJ, session, the parties litigated the Defense motion to dismiss. The military judge denied the motion.[2]

On 19 April 2024, at an Article 39(a) session, the military judge entered findings and while doing so, conditionally dismissed[3] Charge IV, Specifications 2, 3, 4, 6 and 7.[4] Following the conditional dismissal of Charge IV, Specifications 2, 3, 4, 6 and 7, the military judge held an R.C.M. 802 conference.

On 19 April 2024, following the R.C.M. 802 conference, trial counsel sent an email to the military judge. In it, trial counsel wrote: "All, [M]emorializing the 802 we just had that confirmed that there has been no ruling on the 'conditional dismissal' issue so [the] government is not on any clock for appellate purposes."[5]

---

[1] App. Ex. XXVII; *see also* R. at 4.

[2] R. 6–8.

[3] The military judge conditionally dismissed Charge IV, Specifications 2, 3, 4, 6 and 7 while announcing findings on 19 April 2024. The military judge did not enter findings with respect to Charge IV, Specifications 2, 3, 4, 6 and 7 on 19 April 2024. *See* R. at 9.

[4] R. at 10.

[5] Appellant's Motion to Attach, 9 September 2024, Appendix A [App'x A].

On 22 April 2024, the military judge responded via email: "That is correct, I have given both sides time to brief the issue to the court. Also, I would like to have an 802 to provide additional information to help guide your briefings."[6]

On 20 May 2024, trial counsel filed a "Government Bench Brief on the Military Judge's Findings" with the trial court and provided a copy to defense counsel.[7]

On 28 May 2024, at an Article 39(a), UCMJ, session, the parties gathered to litigate the "conditional dismissal" issue.[8]

## Discussion.

The majority holds that this Court is without jurisdiction to hear the Government's appeal because the military judge terminated the proceedings as to Charge IV, Specifications 2, 3, 4, 6 and 7 on 19 April 2024. I disagree based on my searching examination of the record and mindful that I am not authorized to find additional facts within the Article 62 context, or substitute my own interpretation of those facts.[9] Based on my review, the military judge clearly indicated on 22 April 2024, via an email to the parties, that there had been no ruling on the conditional dismissal. The military judge also agreed with trial counsel that the Government was "not on any clock for appellate purposes." Indeed, several weeks later, on 28 May 2024, the parties litigated the validity of the military judge's 19 April 2024 conditional dismissal at an Article 39(a) session. Clearly, based on the record, the proceedings were not terminated on 19 April 2024.

The majority appears to dismiss the military judge's 22 April 2024 email as an unlawful extension of seventy-two hour statutory notice requirement resident in Article 62. It was not. In finding that the military judge's email of 22 April 2024 was not an unlawful extension of the seventy-two hour statutory notice requirement, I look to our Court's ruling and analysis in *United States v. Flores-Galarza.*[10]

---

[6] App'x A.

[7] App. Ex. LXX.

[8] R. at 17.

[9] *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007).

[10] *United States v. Flores-Galarza*, 40 M.J. 900, 903 (N.M.C.M.R. 1994).

In *Flores-Galarza*, the trial judge made a ruling, suppressing evidence.[11] The ruling was made on 27 May 1994.[12] After the court ruled, the trial counsel advised that the government was contemplating an appeal under Article 62. The trial counsel further advised the military judge that "written notice of an appeal is required within 72 hours. Seventy-two hours would be Monday, [30 May 1994] a holiday."[13] To which the military judge responded: "[y]ou can make it Tuesday [31 May 1994]."[14] In doing so, the military judge extended the government's 72-hour statutory timeline by a day so that the deadline would not toll on a holiday.[15] The *Flores-Galarza* Court found that the military judge lacked the authority to extend the seventy-two hour statutory notice window and thus, the Court lacked jurisdiction to hear the appeal.[16] I agree with the analysis and holding, but that is not what occurred in this case.

Here, the military judge did not extend the Government's seventy-two hour statutory notice period in the email of 22 April 2024. Instead, the military judge agreed with Government counsel that there was *no ruling* on the "conditional dismissal," that the trial court gave "both sides" time to brief the issue, and that the trial court would hold another R.C.M. 802 conference "*to provide additional information to help guide [the parties] briefings.*"[17]

In *Flores-Galarza*, it was "apparent the military judge and trial counsel viewed the military judge's announcement at the hearing on 27 May 1994 to be the ruling of the court."[18] There is no such certainty here. To the contrary, it is readily apparent that the military judge and trial counsel viewed the military judge's 22 April 2024 email response as definitively establishing that there had been no ruling and that there would be another proceeding at a later date to litigate the specific legal issue. That later proceeding took place on 28 May 2024.

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 907.

[17] App'x A (emphasis added).

[18] *Flores-Galarza*, 40 M.J. at 906.

No form of words and no peculiar formal acts are necessary to evince the ruling of a military judge.[19] How rulings are entered in trials by courts-martial varies according to the circumstances of the case.[20] In assessing whether a ruling has, or has not, been issued by a military judge, courts must give weight to the intentions of the military judge as manifested by his or her actions on the record of a particular case.[21]

Here, the military judge's actions evidence not an unlawful extension of the seventy-two hour clock, but a clear expression that no ruling was issued on 19 April 2024. The military judge's decision to hold further proceedings and provide the parties an opportunity to be heard beyond the Article 39(a) session of 19 April 2024 evidences a clear intent of the military judge, based on her actions on the record in this case, that there was no finality to the conditional dismissal of 19 April 2024.

*1. The proceedings were not terminated on 19 April 2024.*

I would find that the Article 39(a) session of 28 May 2024 was a proceeding and thus a *prima facie* showing that the military judge did not terminate the proceedings with respect to Charge IV, Specifications 2, 3, 4, 6 and 7 on 19 April 2024.[22]

In determining whether a military judge's dismissal of a charge or specification is appealable by the United States, we must look to whether there was a termination of the proceedings with respect to that charge or specification.[23] In doing so, the key to the analysis is whether the military judge's actions operated to terminate the proceedings with respect to a charge or specification,

---

[19] *Id. Cf. United States v. Hark*, 320 U.S. 531, 534 (1944) (Interpreting the Criminal Appeals Act, "[i]n view of the diverse practice and custom in District Courts we cannot lay down any hard and fast rule. Where, as here, a formal judgment is signed by the judge, this is *prima facie* the decision or judgment rather than a statement in an opinion or docket entry.").

[20] *Flores-Galarza*, 40 M.J. at 906.

[21] *Id. See also Hark*, 320 U.S. at 534–35; *see also United States v. Schaefer Brewing Co.*, 356 U.S. 227, 232 (1958) (while an opinion may embody a *final decision*, the question whether it does so depends upon whether the judge has or has not clearly declared his intention in this respect to his opinion, the Court found that the trial court's opinion did not constitute a "*complete* act of adjudication"); *cf. United States v. Midstate Horticultural Co.*, 306 U.S. 161, 163 n.2 (1939).

[22] *See United States v. Badders*, 82 M.J. 299, 303–04 (C.A.A.F. 2022).

[23] *Id.* at 303.

*in that particular court-martial.*[24] If a military judge's actions terminated the proceedings with respect to that particular charge or specification, the Government's 72-hour notice clock starts to run as a result of the military judge's ruling. Thus, if a military judge's actions do not have the effect of terminating the proceedings, the Government's seventy-two hour notice clock does not start to run.

Here, the record clearly supports that there was no termination of the proceedings on 19 April 2024 with respect to the dismissal of Charge IV, Specifications 2, 3, 4, 6, and 7. This is evidenced by the fact that the military judge directed an additional proceeding aimed at litigating the "conditional dismissal" issue that ultimately manifested in the Article 39(a) session of 28 May 2024 where the Government filed a brief, and the parties presented argument on the record.[25]

The majority posits that the Article 39(a) session of 28 May 2024 was nothing more than a "restatement of the [military judge's] ruling of 19 April 2024."[26] However, the record demonstrates that the Article 39(a) session of 28 May 2024 was more than a mere restatement of a previous ruling.

At the 28 May 2024 Article 39(a) session, the military judge articulated on the record, *for the first time*, that her dismissal of Charge IV, Specifications 2, 3, 4, 6 and 7 on 19 April 2024 was not a "conditional dismissal" but instead a granting of the Defense's 11 March 2024 motion to dismiss for an unreasonable multiplication of charges.[27] The majority's conclusion is unsupported by the record. The military judge's new announcement that the dismissal of Charge IV, Specifications 2, 3, 4, 6 and 7 was not conditional, but made pursuant to a previously litigated, and previously *denied* Defense motion to dismiss. This makes the 28 May 2024 Article 39(a) session far more than a mere "restatement" of the 19 April 2024 dismissal; it mutated into a non-conditional ruling based on a newly announced legal rationale.[28] As such, this Court has jurisdiction in this case. In my opinion, the termination of the proceedings with respect

---

[24] *Id.*

[25] R. at 17–21.

[26] *Ante* at 9.

[27] R. at 17–21.

[28] The military judge's written ruling of 7 June 2024 (Appellant's Motion to Attach, 9 Sep. 2024, Appendix C, at 7: Findings of Fact (r) and (t)) indicates that the parties were advised of her intent to grant the Defense motion to dismiss Charge IV, Specifications 2, 3, 4, 6 and 7 *prior* to 28 May 2024 during several R.C.M. 802 conferences. I

to Charge IV, Specifications 2, 3, 4, 6 and 7 occurred on 28 May 2024, not 19 April 2024.

We should take the military judge at her word as we did in *Flores-Galarza.* We should look to the intentions of the military judge as manifested by her actions on the record to determine whether a military judge has issued a final ruling. If a military judge seeks to terminate the proceedings with respect to a charge or specification, then the military judge should actually terminate the proceedings.[29] The majority opinion enables the military judge to conjure an unreviewable post hoc rationalization of her 19 April 2024 conditional dismissal.

*2. Rule for Court-Martial 802 Conferences.*

While I respectfully disagree with my colleagues in the majority, I also write separately to note my concern with the military judge's apparent expansive reading of the purpose and scope of R.C.M. 802.

It is clear that there were multiple R.C.M. 802 conferences held in this case. Unfortunately, the several R.C.M. 802 conferences were inadequately summarized on the record. It is also apparent that the military judge led a lengthy discussion related to the issue of the "conditional dismissal" during one or more R.C.M. 802 conferences. That discussion should have been litigated on the record, and not in an R.C.M. 802 conference. Indeed, the fact that trial counsel sent the 19 April 2024 email seeking clarification as to whether there was a final ruling on the conditional dismissal issue is evidence of the confusion created by the expansive use of R.C.M. 802 conferences in this case.

---

would give this no deference as these findings of fact are not supported in the record. If this were true, there would have been no reason to "conditionally dismiss pending appellate review." R. at 10. Moreover, a conditional dismissal pending appellate review without a corresponding finding of guilty is legal error because by dismissing without making a finding, there is nothing for this Court to review. *See* 10 U.S.C. § 866(d)(1)(A).

[29] Our superior court has recently reminded us that Article 62 is to be liberally construed. Article 62(e) specifically states that the "provisions of this section are to be liberally construed to effect its purposes." It would contradict this binding mandate, as well as the language of the statute, to adopt the majority's restrictive reading of the appellate landscape and find that the 19 April 2024 Article 39(a) session terminated the proceedings and started the Government's seventy-two hour notice clock. *See Badders*, 82 M.J. at 304.

A military judge may conduct R.C.M. 802 conferences with the parties to consider such matters as will promote a fair and expeditious trial.[30] The purpose of these discussions is to inform the military judge of anticipated issues, scheduling difficulties, administrative matters, and to provide an opportunity for efficient resolution of issues where the parties agree.[31] R.C.M. 802 conferences should not be used to litigate or decide contested issues.[32] No party may be compelled to resolve any matter at an R.C.M. conference.[33] Military judges should refrain from using R.C.M. 802 conferences for more than their intended purpose. This not only ensures that objections, positions and *rulings* are preserved with clarity for later appellate review, but supports the transparency of the court-martial process. Here, the military judge's extensive use of R.C.M. 802 conferences led directly to the lack of clarity in the ruling, and the resulting confusion in this case.

In short, a R.C.M. 802 conference is not a proper vehicle for the development or resolution of disputed issues, factual or legal; a party's factual or legal position must be fully developed on the record. The military judge must ensure the record is complete.[34]

For the reasons outlined above, I respectfully dissent.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[30] R.C.M. 802(a).

[31] R.C.M. 802(a), Discussion.

[32] R.C.M. 802(a), Discussion.

[33] R.C.M. 802(c).

[34] *See Scott v. United States*, Misc. Dkt. No. 84-04, 1984 CMR LEXIS 3546, at *3-4 (N.M.C.M.R. October 3, 1984) (unpublished).